Fuld, J.
The question posed for our consideration is whether certain property at the plant of the Bethlehem Steel Company in the City of Lackawanna was properly classified as taxable real property by the State Board of Equalization.
Pursuant to the authority vested in it (L. 1960, ch. 335, § 10), the board fixed the state equalization rate for the city (for 1959) at 25 by adding to its appraisal of the full value of the taxable real property in the city $119,536,300 of property at the Bethlehem plant which the city had considered not properly assessable as real property and, accordingly, had not included in its assessment roll.[1] Challenging the board’s determination (of 25) *226 which represented a sharp reduction in its equalization rate, the city brought the present article 78 proceeding, contending that the property in issue was not taxable as real property under subdivision 12 (par. [f]) of section 102 of the Eeal Property Tax Law. Although the court at Special Term and the Appellate Division disagreed as to several items of comparatively small value in the establishment of the equalization rate, their rulings in substantial measure sustained the board’s determination.
The property which accounts for the $119,536,300 increase in valuation consists of these items: 7 blast furnaces valued at $53,000,000; 35 open hearth furnaces valued at $29,000,000; 459 coke ovens valued at $24,000,000; 95 soaking pit furnaces valued at $5,700,000; a by-products plant valued at $2,000,000 (included in which were piping and pumps worth $341,600); electrical and steam properties valued at $4,707,300; and ore bridges and unloading equipment valued at $1,129,000. The first four items — the blast, open hearth and soaking pit furnaces, as well as the coke ovens—which comprise $111,700,000 of the property, may be considered together since they possess the same basic physical characteristics. They are, essentially, substantial masonry structures, some of great size, reinforced or contained by steel shells or backstays.
Some idea of the monumental size of the 7 blast furnaces is suggested by the fact that an average of 200 carloads of brick was required to construct the masonry in each of them. They average about 150 feet in height, have a hearth diameter of 21 to 29 feet and rest on heavy concrete foundations which are supported by pilings driven to bedrock. Concededly, neither the masonry nor the foundations could be moved and while, conceivably, the steel shell encasing the blast furnace masonry stack could be moved, this could be accomplished only by dismantling or cutting it (by acetylene torch) into pieces of movable size. The 35 open hearth furnaces and 459 coke ovens — containing, in proportion to their steel shells, a greater amount of refractory masonry than do even the blast furnaces — are equally unmovable and the soaking pit furnaces include a 150-foot high smokestack of masonry and steel which would tend to further discourage any thought of moving them.
There is no doubt that, by common-law standards, these structures would be deemed real property. Their magnitude, their *227 mode of physical annexation to the land and the obvious intention of the owner that such annexation be permanent would, indeed, compel that conclusion. However, this is not decisive of the question presented. There must also be considered the definition of taxable real property contained in subdivision 12 (par. [f]) of section 102 of the Beal Property Tax Law. Insofar as pertinent, that provision reads as follows:
“ 12. ‘ Beal Property ’, * property ’ or ‘ land ’ mean and include:
* * *
“ (f) Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto ”.
In short, this provision, derived from (and replacing) section 3 of the Tax Law, accords to a corporation subject to a franchise tax under article 9-A an exemption from the real property tax for property which is encompassed within the description of “ movable machinery or equipment * * * used for trade or manufacture and not essential for the support of the building [or] structure * * * and removable without material injury thereto ”.[2] Since Bethlehem Steel is such a corporation, that is, one subject to the franchise tax imposed by article 9-A, the taxability of certain of its properties is governed by paragraph (f) of subdivision 12.
Quite obviously, the great complex of masonry structures, erections and equipment at Lackawanna does not fall within the special exemption for “ movable machinery and equipment”. The city contends, however, that the furnace and oven struc *228 tures are nontaxable under paragraph (f) of subdivision 12 because they fall within the category of “ equipment consisting of structures or erections to the operation of which machinery is essential
The argument does not survive analysis. Any ambiguity arising from a reading of subdivision 12 (f) in its entirety is thoroughly clarified by its legislative history.
The Real Property Tax Law was enacted in 1958 to recodify and incorporate into one statute those provisions of the old Tax, Education and Village Laws, as well as certain unconsolidated enactments, which related to the assessment and taxation of real property (L. 1958, ch. 959). Neither paragraph (f) of subdivision 12 nor any other provision of the new statute was intended to change the definition or classification of real property subject to the real property tax or set any new standards or criteria for determining the taxable status of such property. The very Legislature which wrote paragraph (f) of subdivision 12 into the Real Property Tax Law explicitly, and unequivocally, announced, in subdivision 5 of section 1602 of that same law, that
“ [the] repeal * * * of # * * the last two sentences of section three of [the Tax Law] and the re-enactment of the provisions thereof in [subdivision] twelve * * * 0f section one hundred two * * * are intended to effectuate a continuation and restatement, without change in substance or effect, of the provisions of such laws and the classification of any property as real property or personal property, as the case may be, shall not be broadened, increased, discontinued, diminished, affected or impaired by reason of such re-enactment.”
The “ last two sentences ” of section 3 of the Tax Law—which, according to the Legislature’s pronouncement, reflected the sense and meaning of the new paragraph (f) of subdivision 12 — read as follows:
“ As used in this section, the term ‘ personal property, ’ in its application to the property of corporations taxable under article nine-a of this chapter, shall include any movable machinery and equipment used for trade or manufacture and not essential for the support of the *229 building, structure or superstructure, and removable without material injury thereto and shall not include boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting, equipment for the distribution of heat, light, power, gases and liquids, nor any equipment consisting of structures or erections to the operation of which machinery is not essential. An owner of a building is entitled to the same exemption under this section as a lessee.”
Thus, section 3 provided for a single tax exemption and specifically excluded from the exemption two other categories of property. More particularly, with respect to one of the latter categories, the section recited that the term personal property was to exclude “ any equipment consisting of structures or erections to the operation of which machinery is not essential ”. This meant, of course, that such equipment was to continue to be treated as real property and to be taxed as such. In the 1958 recodification, the personal property tax having theretofore been abolished (L. 1933, ch. 470, § 1), former section 3 was rephrased (in Real Property Tax Law, subd. 12, par. [f]) as a definition of real property. In the course of this reformulation, the “equipment” clause was transposed or inverted—to recite that the term real property was to exclude “ equipment ” consisting of structures or erections to whose operation machinery “is essential”—but this transposition or inversion was not intended to effect a reclassification of property or establish a new tax exemption.
In view of the very clear expression of legislative design contained in subdivision 5 of section 1602 of the Real Property Tax Law—that the repeal of section 3 and the re-enactment of its provisions in subdivision 12 “ are intended to effectuate a continuation and restatement” of the former statute “without change in substance or effect” — paragraph (f) of subdivision 12 may not be read as extending or affecting the scope of the exemption previously provided by section 3. The latter section contained a single exemption, namely, “ movable machinery and equipment used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto ”, and that *230 description covers none of the Bethlehem Steel property here in dispute.
We deal, unquestionably, with a statute of exemption. Not only has the Legislature consistently and expressly referred to the exclusion as an “ exemption ” (Tax Law, § 3 [last sentence]; Tax Law, § 219-1, as amd. by L. 1919, ch. 628, § 14) but the courts have so characterized it. (See, e.g., Matter of Martin v. Gwynn, 18 A D 2d 851, 852.) As this court noted, “ Tax exemptions * * * are limitations of sovereignty and are strictly construed. [Cases cited.] If ambiguity or uncertainty occurs, all doubt must be resolved against the exemption.” (People v. Brooklyn Garden Apts., 283 N. Y. 373, 380; see People ex rel. Mizpah Lodge v. Burke, 228 N. Y. 245, 247-248.) Considering both the language of the statute before us and its history, it would be an indefensible extension of the phrase 11 movable machinery ” to hold that the huge masonry and steel structures here under consideration fall within that statutory exemption. In construing paragraph (f) of subdivision 12, we may not forget that its language is derived from former section 3 and was intended to exclude from exemption the same property as was excluded by the earlier statute. To construe paragraph (f) of subdivision 12 as creating a new exemption would violate both the cardinal principle that exemption statutes are to be strictly construed and the basic provision contained in the first sentence of old section 3 (re-enacted in Real Property Tax Law, § 300) that “ [a] 11 real property within the state is taxable unless exempt from taxation by law.” (See, also, County of Herkimer v. Village of Herkimer, 251 App. Div. 126, 127, affd. 279 N. Y. 560.)
It necessarily follows that the courts below correctly characterized as assessable real property the four categories of property (consisting of furnaces and ovens) valued at $111,700,000.
There remains for our consideration the other properties which the State Board determined to be taxable: a by-products plant, valued at $2,000,000, and electrical and steam properties, valued at $4,707,300.[3] Special Term and the Appellate Division *231 sustained the board’s determination as to the tanks and towers of the by-products plant, valued at $1,658,400. These tanks and towers do not appear to be “ movable machinery or equipment ” and are, therefore, like the masonry and steel furnaces and ovens, not exempt from taxation. The area of disagreement between Special Term and the Appellate Division was confined to the piping and pumps in the by-products plant, valued at $341,600, and the electrical and steam properties, valued at $4,707,300. Although Special Term held both to be taxable real property, the Appellate Division held them to be exempt and modified the order to the extent of $5,048,900 — an amount which, we pause to observe, would make no substantial change in the equalization rate. On the record before us, the items as to which the courts below were in disagreement appear to fall within the taxable category of “ equipment for the distribution of heat, light, power, gases and liquids ” (Real Property Tax Law, § 102, subd. 12, par. [f]).
The order of the Appellate Division should be modified, without costs, by reversing so much thereof as held that the steel piping and pumps in the by-products plant and the items included in the electrical and steam group were not taxable real property and, as so modified, the order appealed from should be affirmed.

. An equalization rate, which is used for at least 30 purposes (see Principles and Procedures Used in Establishing State Equalization Rates [Jan., 1963], p. 4), has been defined as “reflecting] the relationship of the total assessed valuation of taxable property in a locality to the aggregate full value of those properties” and ‘“indicating] the percentage of full value at which the assessor in a locality is assessing, on the average’, taxable property in his locality.” (Bucho Holding Co. v. Temporary State Housing Rent Comm., 11 N Y 2d 469, 472, n. 2.) In other words, the board strives to appraise all real property in the State according to the same standard or measuring stick, namely, “ full value ”. It then compares the local assessment rolls with its own figures in order to ascertain the proportion or percentage which the assessed value of property in a particular locality bears to its “full value”. This proportion or percentage, termed the “ equalization rate ”, is a crucial factor when subsequent calculations are made by other departments of State Government, for example, in distributing state aid to localities, in apportioning taxes of so-called joint school districts and in determining the limitations on local taxing and borrowing powers. (See, for general discussion, Principles and Procedures Used in Establishing State Equalization Rates [Jan., 1963], p. 4 et seq.)

. The earliest version of the provision became part of our law in 1917 when the Legislature first subjected certain corporations to a franchise tax in lieu of a tax on personal property (L. 1917, ch. 726).

. Special Term held that certain other items, described as ore bridges and Hulett unloaders (valued by the board at $1,129,000), were exempt from taxation. The State Board did not appeal to the Appellate Division from such holding and these items of property are not before us.