In the Matter of LIESELOTTE KOELBL et al., Doing Business as PALATINE NURSING HOME, Petitioners, v ROBERT P. WHALEN, as Commissioner of the Department of Health of the State of New York, Respondent.

Third Department, July 13, 1978

APPEARANCES OF COUNSEL

*Basloe, Basloe & Gallagher (Evalyn G. Basloe* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General (John M. Dufur* and *Ruth Kessler Toch* of counsel), for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

In March, 1976 the petitioners (operators of the Palatine Nursing Home) were served with a notice charging 114 violations of the State Hospital Code[1] (10 NYCRR Part 700 *et seq.),* which code was promulgated pursuant to article 28 of the Public Health Law. After a hearing and the decision of the hearing officer (finding petitioners guilty on most of the charges), the commissioner, in an order dated July 6, 1977, found that petitioners had committed some 54 violations. Petitioners assert that certain of the regulations they have been held to have violated are invalid as vague and subjective.

In *Matter of Levine v Whalen* (39 NY2d 510, 519) the Court of Appeals struck down an earlier set of nursing home regulations promulgated by respondent on the ground that the regulations established standards "which were modified by words, indicating that they were as 'determined', 'acceptable', 'approved' or 'permitted' by the department. Being subjective * * * these standards were unreasonable and arbitrary and therefore invalid."

Here, the violations concerning the sewage facilities

---

1. The regulations in issue are those in effect at the time the charges were brought in March, 1976. Certain of the regulations challenged herein were subsequently amended or repealed. No view is expressed as to the validity of the subsequent regulations.

(702.1 [b]),[2] the laundering of linens (702.5 [c]) and the nursing staff (731.2 [c] [1] [2]) cannot stand. They impose no objective standard, but ultimately require the facilities and services to meet the "approval" or "satisfaction" of the commissioner. However, paragraph (3) of subdivision (c) of section 731.2 (regarding nursing staff) bases its requirement on the "needs of the patients", which is sufficiently objective to withstand attack. Ordinarily, the medical needs of a patient would not vary with the subjective interpretations of the observer, but rather would be objective needs, reasonably-well identifiable by all competent observers. The violations of paragraph (3) of subdivision (c) should be upheld.

■ The regulations prescribed that all records (required to be kept by the Hospital Code) be maintained "in a place, form and system acceptable to the department" (730.6) and that the medical record of each patient be maintained on "forms and in a chart or other method acceptable to the department" (730.7 [a]). These regulations are subjective and, therefore, invalid. However, the regulations which mandate that certain information be kept (e.g., "chronological admission registers" 730.6 [a]) are objectively stated. These regulations (i.e., 730.7 [b]; 730.7 [c] [2], [3], [4], [5], [6], [19]; 731.1 [j] [1], [3], [4]; 731.1 [k] [3]; 731.2 [b] [5]) are not invalid for subjectivity.

The same is true for the nonmedical records required to be kept in a form "as approved". Although the petitioners may not be penalized for the form of their nonmedical records, the provisions requiring the keeping of certain nonmedical records (i.e., 730.4 [c]; 730.6 [i]; 731.3 [f] [2], [3]; 731.3 [g] [2]) are not invalid on the ground of subjectivity.[3]

■ The petitioners next contend that because the formal record keeping requirement of section 730.6 is invalid (records to be kept in a place, form, and system "acceptable to the department", see *supra*), the various substantive violations which were uncovered by the commissioner's investigators must be vacated since the investigators relied on the absence

---

2. Unless otherwise indicated all references are to Part 700 of title 10 of the Official Compilation of Codes, Rules and Regulations of the State of New York.

3. It should be noted that many of these record keeping regulations appear burdensome (e.g., "records of weekly menus of all diets as served to patients and personnel", [731.3 (f) (2)]) and some require action by the attending physician (who presumably is not subject to the control of the nursing home operator). Violations of such rules could be punished only by a proportionate penalty. Because the case will be remanded for reconsideration of the penalty, we need not decide what penalties would be appropriate.

412

of records in "acceptable" form for their conclusions that the substantive violations occurred. For example, the commissioner found that "[f]ire drills were not being conducted properly (Minutes of July 14, p. 1445) * * * Section 702.3 [h]." (Finding 7e.)[4] Section 702.3 (h) required that fire drills be conducted "at irregular intervals at least 12 times per year[5] for each shift". The investigator stated, at page 1445 of the transcript, that only six drills were held during the year. Although the investigator apparently based her conclusion as to the number of drills on records kept by petitioners, the petitioners do not dispute the factual assertion that less than 12 drills were held. Thus, the subjective record keeping regulation does not affect the finding of a substantive violation of fire drill requirements. Similarly, in the absence of contradictory proof from petitioners, the finding concerning proper designation of personal physicians (7ii), nursing service orientation, etc. (7kk), dietetic service (7mm) and employee medical examinations (7y) is unaffected by the invalid record keeping requirements.[6]

As to the numerous violations of construction and equipment standards (711.2; 711.4; 711.5) applicable to existing nursing homes such as petitioners', the commissioner had the power to waive the standards upon a showing that, *inter alia,* the waiver "is in the community interest." (711.9 [d] [4].) This waiver standard is impermissibly vague and, in effect, gives the commissioner unrestrained discretion to grant or withhold a waiver *(Matter of Levine,* 39 NY2d 510, 519, *supra).* Thus, the violations based on the construction and equipment standards must be vacated.

Aside from the validity of regulations, certain of the commissioner's findings must be vacated for failure to clearly state exactly what facts were found. The commissioner's hearing was held pursuant to section 2806 of the Public Health Law. The determinations of the hearing are, by statute, subject to article 78 review (Public Health Law, § 2806, subd 4). In such cases findings of fact must be made by the administra-

4. This and subsequent references to "Findings" refer to the findings set out in the commissioner's order dated July 6, 1977.

5. This portion of the regulation deleted from this quotation renders the regulation ambiguous as to whether a total of 12 drills or 12 drills per shift are required. Since only a total of 6 drills was carried out, the petitioners were in violation in any event.

6. Which is not to say that Findings 7e, 7ii, 7kk, 7mm, and 7y are confirmed. These findings may be invalid by force of another invalidating pronouncement in this opinion. (See, e.g., discussion of Findings 7kk and 7mm, *infra).*

tor "such that the parties may be assured that the decision is based on evidence in the record [and in a form] so as to permit intelligent challenge by a party aggrieved and adequate judicial review [citations omitted]." *(Matter of Simpson v Wolansky,* 38 NY2d 391, 396.)

The findings that petitioners did not "always" provide adequate "nursing service orientation", etc. (7kk) or adequate "dietetic service" (7mm) must be vacated since they do not permit intelligent challenge or review. These findings merely cite pages in the transcript at which department investigators testified, *inter alia,* that the orientation and service were not, in their opinion, proper or satisfactory. For example, as to Finding 7kk (violation of 731.2 [b] [6] [orientation to be given to nurses]) the department's expert (whose testimony is cited in Finding 7kk) thought the nursing orientation was inadequate because "the orientation program was the same for RN's, LPN's, and nursing assistants." If the commissioner's Finding 7kk is based on this group orientation procedure, it would seem to depend on a subjective interpretation of section 731.2 (b) (6), which does not explicitly require separate orientations for each class of nurses. The commissioner's finding may be based on other portions of the transcript cited in Finding 7kk, but such imprecise findings make impossible petitioners' task of challenging the reasonableness of the finding, especially when as here, it is one of over 50 findings based on some 2,700 pages of testimony.

In addition to 7kk, Findings 7mm (inadequate dietetic service), 7x (inadequate orientation and "written policies" for employees), 11 (failure to publish refund policies), and 12 (not "adequately implement[ing] the policies of the nursing home, in that the facility's policies are not implemented") must be vacated because of lack of specificity. Although ordinarily administrative determinations vacated for lack of specificity are remanded to the agency with an opportunity for it to clarify its findings (see, e.g., *Matter of Simpson, supra; Matter of Mayer v Kummerle,* 24 AD2d 882), in this case, given the great burden suffered by petitioners in defending against the myriad (for the most part miniscule) charges, the respondent is foreclosed from attempting to remedy its vague findings.

■ The hearing officer, in his decision dated February 9, 1977, recommended a $25,000 fine, $19,000 of which he thought should be suspended, and continuation of petitioners' operating certificate on five-year probation. The commissioner

imposed the full $25,000 fine and revoked the certificate outright. The fine was improperly imposed since the respondent failed to give the warning notice required by subdivision 7 of section 2803 of the Public Health Law (cf. *Matter of Fox Mem. Hosp. Soc. v Whalen,* 55 AD2d 495, app dsmd 42 NY2d 909).

Accordingly, since the imposed penalty was invalid, and, further, since more than a few findings supportive of certificate revocation have been struck down, it is necessary that this matter be remanded for further consideration by respondent of petitioners' entitlement to certification as a nursing home. (Cf. *Matter of Rochester Colony v Hostetter,* 19 AD2d 250, 256 and cases cited therein.)

One final point warrants comment. The petitioners allege in paragraph 7 of their petition that respondent's counsel telephoned their attorney on April 11, 1977 demanding that petitioners sign a stipulation admitting the charged violations and surrendering their right to article 78 review. If this were done, the commissioner would agree not to revoke the operating certificate. When he asked if he could see the hearing officer's findings, petitioners' counsel was told that a copy would be provided only after petitioners signed the stipulation. These allegations were admitted in respondent's answer.

■ Although respondent's determination of the appropriate penalty is entitled to great deference *(Kostika v Cuomo,* 41 NY2d 673), a penalty imposed as a result of bias or in retribution for an assertion of rights would be an abuse of discretion within the meaning of CPLR 7803 and therefore not be so entitled.

The determination should be annulled, with costs, and the matter remitted for further proceedings not inconsistent herewith.

KANE, STALEY, JR., MAIN and LARKIN, JJ., concur.

Determination annulled, with costs, and matter remitted for further proceedings not inconsistent herewith.