◼ In the Matter of ISIDORE SHERMACK, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.—Proceeding instituted in this court, pursuant to subdivision 4 of section 6510 of the Education Law, to annul a determination of the Commissioner of Education which revoked petitioner's license to practice pharmacy. On December 9, 1976 the petitioner, Isidore Shermack, a pharmacist, was charged with fraudulent and unprofessional practice in violation of subdivisions (2) and (9) of section 6509 of the Education Law and certain regulations promulgated thereunder. The charges specifically alleged that on five named dates between March 24 and June 23, 1976 petitioner dispensed a total of 38 penicillin tablets, 21 tetracycline capsules (an antibiotic), 46 valium tablets, and an "Ovral—21 Daypack" without prescriptions, all drugs for which prescriptions are required. Petitioner was further charged with, inter alia, failing to keep adequate records for the period May, 1975 to June, 1976, suffering inventory shortages of certain controlled substances on June 23, 1976, and maintaining an outdoor electric sign reading "CUTRATE PRESCRIPTIONS". The hearing panel of the Committee on Professional Conduct of the State Board of Pharmacy, after hearing testimony from petitioner and respondent, found "that the charges * * * have been proved by substantial legal evidence * * * and we find [petitioner] guilty of the same." The hearing panel recommended petitioner's license be suspended for six months. The Regents Review Committee adopted the hearing panel's factual findings without elaboration and recommended revocation of petitioner's license rather than the six-month suspension. The Board of Regents adopted the hearing panel's findings and imposed the penalty (i.e., license revocation) recommended by the review committee. The petitioner's primary argument in this court is that the factual findings of the respondent and its various committees are inadequate to permit intelligent challenge or review in the courts. It is well established that such specific factual findings must be made by an administrator deciding an adjudicatory proceeding (State Administrative Procedure Act, § 307; Matter of Simpson v Wolansky, 38 NY2d 391, 396). With respect to selling prescription drugs without a prescription, the respondent's investigator testified that she purchased amounts of penicillin, tetracycline, valium and ovral on five occasions, and that on each occasion she did not present a written prescription. The petitioner admitted at the hearing that he sold the drugs to the investigator without written prescriptions. However he testified that on four of the five occasions the investigator identified herself as a patient of one Dr. Shuman. The

petitioner claimed that on these four occasions he telephoned his friend Dr. Shuman and received an oral prescription. The respondent's findings of fact on the selling without prescription charges state that on the five days in question petitioner "dispensed, without a prescription, [the particular prescription drug] in an unlabeled container." Although no indication is given as to whether the respondent credited petitioner's assertion regarding receipt of oral prescriptions, this is clearly implied. If oral prescriptions had been received, they would have authorized dispensing the drugs, at least the drugs other than valium.* It would have been better if the respondent had explicitly commented on the petitioner's defense, but in the relatively simple context of this case the factual findings made are minimally adequate (cf. *Matter of Koelbl v Whalen,* 63 AD2d 408). As to the finding concerning record-keeping and inventory shortages, a similar result follows. The petitioner testified that these defects were the result of robberies at the pharmacy. Again, it would have been better to explicitly reject this testimony. But where the issues are well circumscribed as here, the respondent's bare findings specifying the shortages found and determining that the petitioner "failed to maintain proper records required in a pharmacy in that the daily ledger failed to contain pharmacist initials" were sufficient to apprise this court that the testimony as to robberies was not believed. Additionally, petitioner challenges Finding No. 11 which states that he "maintained an outdoor electric sign at his pharmacy which read 'CUTRATE PRESCRIPTIONS' ". There is substantial evidence to support this finding and no doubt that such a sign violates the respondent's regulations (see 8 NYCRR 63.3 [c]), which prohibit the "use of the words 'cut rate' " in pharmacy advertising. Nor does this narrowly drawn restriction on the form of advertising violate the First Amendment. In *Virginia Pharmacy Bd. v Virginia Consumer Council* (425 US 748) the court struck down a Virginia statute which prohibited any form of drug price advertising. The basis of the decision was that accurate advertising, done in an undeceptive manner, is within the protection of the amendment. The sign in issue here does not advertise particular prices. It seeks to draw in customers by promising all prices are low. The restriction against such a form of advertisement is reasonable and clearly among those restrictions condoned by the Supreme Court (p 771). Finally, the petitioner contends that the punishment imposed is unduly harsh. However, considering the violations found in this case, the penalty of revocation is not shocking to one's sense of fairness, and, therefore, should not be upset *(Matter of Martin v Nyquist,* 55 AD2d 726). Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Greenblott, Sweeney, Main and Mikoll, JJ., concur.

---

* "A pharmacist may fill an oral prescription for a drug, other than a controlled substance, made by a practitioner legally authorized to prescribe drugs." (Education Law, § 6810, subd 4.) Valium, a controlled substance, may be dispensed upon an oral prescritpion, but such prescription must be contemporaneously reduced to writing and, if the pharmacist does not receive a written prescription within 72 hours, he must make a record of such fact (Public Health Law, § 3337).