In the Matter of STATE BOARD OF EQUALIZATION AND ASSESS-MENT, Appellant, v ROBERT KERWICK, as Assessor of the Town of Hardenburgh, et al., Respondents. (Proceeding No. 1.)

In the Matter of STATE BOARD OF EQUALIZATION AND ASSESS-MENT, Respondent, v ROBERT KERWICK, as Assessor of the Town of Hardenburgh, et al., Appellants.

In the Matter of ROBERT KERWICK, as Assessor of the Town of Hardenburgh, et al., Appellants, v STATE BOARD OF EQUALIZATION AND ASSESSMENT, Respondent. (Proceeding No. 2.)

STATE BOARD OF EQUALIZATION AND ASSESSMENT, Respondent, v ROBERT KERWICK, as Assessor of the Town of Harden-burgh, et al., Appellants. (Proceeding No. 3.)

Third Department, January 31, 1980

### APPEARANCES OF COUNSEL

*Oppenheim, Drew & Kane (Stephen L. Oppenheim* of counsel), for Robert Kerwick and others.

*Robert Abrams, Attorney-General (George M. Thorpe, Jeremiah Jochnowitz* and *Shirley Adelson Siegel* of counsel), for State Board of Equalization and Assessment.

### OPINION OF THE COURT

KANE, J. P.

### I

The genesis of all this litigation lies in the successful efforts of a number of property owners in obtaining exemptions from local real property taxes through membership in the Universal Life Church (ULC). The initial steps in these efforts became known to the State Board of Equalization and Assessment (SBEA) late in 1976. Following numerous inquiries concerning the propriety of these exemptions from interested persons, SBEA, through its counsel, issued what it termed an "advisory memorandum to assessors" dated April 11, 1977. The memorandum was directed to the taxable status of real property owned by members of the ULC. Comprehensive in scope, it described the factual situations presented and the threshold constitutional issues involved; reviewed the applicable provisions of the New York State Real Property Tax Law; and concluded that no factual situation was present

which would entitle any ULC member to an exemption under the Real Property Tax Law. This memorandum was ultimately followed by a personal visit to the office of respondent Kerwick, Assessor of the Town of Hardenburgh, in an unsuccessful effort to review the records of the town's assessments following the taxable status date of May 1, 1977. Further unsuccessful efforts precipitated the issuance of subpoenas and subpoena duces tecum upon Kerwick, who ultimately appeared before SBEA at a hearing in Albany on June 22, 1977. However, in the interim, on June 16, 1977, SBEA commenced the first entitled proceeding seeking to void respondent town's 1977 tentative assessment roll, enjoin proceedings on grievance day, direct a return of the tax rolls to assessors, and place the exempted ULC properties upon the tax rolls. We agree with the conclusion of Special Term that this proceeding should be dismissed and reject the arguments advanced by SBEA on this appeal that it has statutory authority to proceed in the *manner contemplated.*

■ ■ SBEA relies primarily upon the language in section 202 (subd 1, par [g]) of the Real Property Tax Law which, in relevant part, provides that: "The Board shall: * * * (g) Furnish assessors with such information and instruction as may *be necessary or proper to aid them in making assessments,* which instructions shall be followed and *compliance with which may be enforced by the board"* (emphasis added). However, this singular reliance overlooks the thrust of article 2 of the Real Property Tax Law, which details the power, functions and responsibilities of SBEA and, in subdivision 2 of section 216, particularizes a method of procedure to be followed when it is confronted with recalcitrant assessors. That section provides: "Whenever it appears to the satisfaction of the board that any assessor or other public officer or employee whose duties relate to assessments has failed to comply with the provisions of this chapter or any other law relating to such duties, or the rules and regulations of the board made pursuant thereto, after a hearing on the facts, the board may issue its order directing such assessor, officer or employee to comply with such law, rule or regulation, and if such assessor, officer or employee shall neglect or refuse to comply therewith within the period of ten days after service on him of such order, the board may apply to a justice of the Supreme Court for a summary order to compel him to comply with such law, rule or regulation, and the justice shall have power to issue

such order." It seems clear to us that these two statutory provisions must be read together. In doing so, it necessarily follows that the sole and exclusive procedures for enforcement of SBEA rules, regulations and orders are those provided by subdivision 2 of section 216 of the Real Property Tax Law. We are aware of the rule that the interpretation of a statute by the agency charged with its administration must be given judicial deference (see *Matter of Howard v Wyman*, 28 NY2d 434), but such an interpretation must be rational and reasonable and not one which would render a specific statutory provision meaningless. Lacking any standing as an aggrieved taxpayer (Real Property Tax Law, § 704) and without statutory authority to obtain the relief sought, under section 202 of the Real Property Tax Law, the petition of SBEA was properly dismissed and the judgment entered July 14, 1977 should be affirmed.

## II

This second entitled proceeding represents an effort by SBEA to comply with the provisions of section 216 of the Real Property Tax Law and to compel the inclusion of ULC properties on the taxable rolls.

As previously stated, Kerwick was subpoenaed to testify before SBEA and to produce all appropriate documentation pertaining to requested ULC exemptions. He appeared and testified on June 22, 1977. The hearing was adjourned to July 7, 1977, and on that date seven additional assessors voluntarily appeared and submitted to questioning before the same hearing officer, the counsel to SBEA. The hearing officer, in his report dated October 21, 1977, concluded that Kerwick, together with three other assessors, had failed to fulfill their statutory duties and recommended that SBEA order these four assessors to restore all ULC exempt properties to the assessment rolls pursuant to section 553 of the Real Property Tax Law. The report was approved on the same day and orders were issued to the four assessors directing correction of the final assessment roll by removal of the ULC properties from the exempt portion of the assessment roll, with directions that they be restored to the taxable portion thereof and that future assessments reflect the full value of those parcels. These orders were served on October 28, 1977. The assessors failed to comply, whereupon SBEA instituted a summary proceeding seeking an order directing compliance (Real Prop-

erty Tax Law, § 216, subd 2). Respondents' cross motion to dismiss the petition was denied, and Special Term granted, in a modified form, the relief sought by petitioner. It did not direct a correction of the assessment rolls (Real Property Tax Law, § 553), but ordered the assessors to place the exempted properties on the rolls as omitted properties (Real Property Tax Law, § 551). However, Special Term did determine that the respondent assessors had followed a deliberate course of conduct in disregard of SBEA's "guidelines" and had granted exemptions upon wholly inadequate bases. Although its decision was dated December 27, 1977, the judgment thereon was not entered until April 25, 1978. In the interim, on January 19, 1978, the involved assessors commenced a proceeding pursuant to CPLR article 78, in which they sought to vacate and annul the orders of SBEA, claiming a denial of due process at the hearings and asserting the unconstitutionality of section 216 of the Real Property Tax Law. This proceeding was dismissed by the judgment entered July 14, 1978, on the grounds that the allegations of unconstitutionality were both conclusory and factually insufficient and that the other issues raised had been determined adversely to these petitioners on their prior motion to dismiss SBEA's petition. Thus, the assessors, as appellants in both of these proceedings, contend that SBEA lacks jurisdiction to order them to determine that any particular property is not tax exempt; that SBEA did not follow the procedures required by section 216 of the Real Property Tax Law or the State Administrative Procedure Act, and that the hearings it conducted did not accord with constitutional principles of due process. They also maintain that SBEA's determinations were not supported by substantial evidence at the hearing. For the most part, we agree.

It is our view that SBEA does not have authority to issue an order which directs a particular assessment of an individual parcel of real property. Our State Constitution demands that provisions for the levy and collection of local taxes by the taxing authorities of such State subdivisions be undertaken by the Legislature, which must also provide for the supervision, review and equalization of assessments (NY Const, art XVI, § 2). The statutes adopted by the Legislature for the latter purpose are contained in article 2 of the Real Property Tax Law. The general powers and duties of SBEA are found in section 202, which authorizes it to investigate and review assessment methods (Real Property Tax Law, § 202, subd 1,

pars [e], [f], [g], [h], [j]) and to establish State equalization rates (Real Property Tax Law, § 202, subd 1, pars [b], [c]). Specific powers have also been granted to SBEA to approve assessments of State land subject to tax (Real Property Tax Law, § 202, subd 1, par [d]), and to assess special franchises (Real Property Tax Law, § 202, subd 1, par [a]), but the plain and simple fact is that nowhere has any statutory power been supplied to review or change individual property assessments. SBEA can visit localities, inquire into methods used, adopt rules and regulations for the preparation and use of assessment rolls, and instruct assessors in the performance of their duties. While the Legislature has plainly given SBEA the power to act as a procedural oversight agency, it has clearly demonstrated an intent not to allow that body to become an active participant in the local assessment process. Such powers have been specifically reserved to the local assessors as reflected by the provisions of article 5 of the Real Property Tax Law.

In addition, the hearings were fatally flawed by SBEA's failure to comply with the statutory mandates contained in the State Administrative Procedure Act. There can be no doubt that its provisions apply to SBEA's actions (State Administrative Procedure Act, §§ 100, 102, subds 1, 3), yet the assessors were denied proper notice of the hearing and its purposes (State Administrative Procedure Act, § 301, subd 2), and, in some instances, their counsel was denied the right to cross-examine certain witnesses (State Administrative Procedure Act, § 306, subd 3). The denial of these rights is even more egregious when, as here, a party may suffer the deprivation of a property interest in the form of a financial penalty (see Real Property Tax Law, § 216, subd 1). Moreover, the ultimate decision of SBEA following the hearing did not contain the necessary findings of fact or a concise statement of the underlying facts supporting its findings (State Administrative Procedure Act, § 307, subd 1). Such failures, standing alone, would be sufficient to vacate the resulting orders (cf. *Matter of Shermack v Board of Regents of Univ. of State of N. Y.,* 64 AD2d 798).

Accordingly, and for the reasons stated, we are compelled to reverse the judgment of April 25, 1978 and to dismiss the petition in that proceeding. In so doing, we must necessarily modify the judgment of July 14, 1978 by dismissing the companion proceeding initiated by the assessors for mootness.

## III

The third action and proceeding decided herein was instituted by SBEA and the State of New York as yet another battle in their dispute with the assessors and boards of review. The necessity for this legal action developed when the assessors effectively circumvented the judgment of the court entered April 25, 1978 by first placing the omitted properties on the assessment rolls for the year 1977 and then contemporaneously removing the same properties from the 1978 rolls, thereby reinstating the exemptions. The defendants are the same individual assessors, the members of their respective boards of review, and those persons who were granted the contested exemptions. Simultaneously with the service of the complaint, plaintiffs moved for mandatory relief, seeking an order directing that the exempt property be placed on the taxable rolls for the years 1977 and 1978 and that the defendant assessors be restrained from exempting these properties for the taxable year 1979. These steps produced a flurry of activity on behalf of the defendants by way of cross motions to dismiss and demands for other relief that further deepened the procedural morass in which all parties had become enmeshed. Upon all the papers before it, including supporting affidavits and exhibits, Special Term precipitously decided the entire matter. Reasoning that it had before it both a declaratory judgment action and an article 78 proceeding, Special Term found the grant of the exemptions arbitrary, capricious and in defiance of the appropriate provisions of law. It then directed the defendant assessors to add the exempt properties to the assessment roll. In the declaratory judgment portion, it declared that the questioned properties had not been shown to be tax exempt and must be added to the taxable rolls. Special Term also granted the requested injunctive relief. Finally, in a summary disposition, it found that since the illegal acts of the assessors had been repeated in the 1978 rolls, they should forfeit the sum of $100 (Real Property Tax Law, § 216, subd 1).

On this appeal from the order entered on that decision, a multitude of issues has been raised involving, among others, the method of service, jurisdiction, standing, timeliness, *res judicata,* election of remedies, and the underlying substantive questions. While we need not or cannot address most of these arguments, we are constrained to point out that in our view the grant of declaratory relief was inappropriate at this juncture. Special Term obviously treated the motion before it

as one for summary judgment, which it had the power to do (CPLR 3211, subd [c]). Nevertheless, in so acting the court must notify the parties of its intention to make a summary determination, thus enabling them to submit additional proof in support of their positions (CPLR 3211, subd [c]; see *Mareno v Kibbe*, 32 AD2d 825; Siegel, New York Practice, § 270, p 328). Defendants assert that no such notice was given, and there is nothing in the record to the contrary. Thus, declaratory relief should not have been granted.

Nor do we believe that the relief directed in the article 78 proceeding was procedurally appropriate under these circumstances. We have expressed our opinions earlier in this decision concerning the extent of the powers granted to SBEA under section 216 of the Real Property Tax Law and concluded that they have no powers beyond those statutorily granted. The State, of course, as a taxpayer has standing outside the provisions of section 216 of the Real Property Tax Law, but its exclusive remedy, in this instance, is pursuant to article 7 of the Real Property Tax Law, as we determined in *Matter of Dudley v Kerwick* (72 AD2d 224 [decided herewith]). The reasons and legal authorities set forth therein are equally applicable to this proceeding. Accordingly, the judgment of March 23, 1979, must be reversed and the complaint and petition therein dismissed.

We recognize that the foregoing procedural defects have made it impossible for us to reach the merits of this controversy. We can only note that specific and detailed methods of procedure are set forth in article 7 of the Real Property Tax Law which, had they been followed initially, would have brought forth a prompt and decisive resolution to the underlying controversy in the manner contemplated by the Legislature.

The judgment entered July 14, 1977, should be affirmed, without costs.

The judgment entered April 25, 1978, should be reversed, on the law, and the petition dismissed, without costs.

The judgment entered July 14, 1978, should be modified, on the law, to the extent that the petition is dismissed as moot, without costs.

The judgment entered March 23, 1979, should be reversed, on the law, and the complaint and the petition dismissed, without costs.

STALEY, JR., J. (concurring in part and dissenting in part). I concur in the affirmance of the judgment entered July 14, 1977, and concur in the reversal of the judgment entered March 23, 1979, only to the extent that it restores the real property exemptions for the year 1977 to the taxable portion of the assessment roll for that year.

I dissent from the majority opinion, and I recommend affirmance of the judgment entered April 25, 1978 and the judgment entered July 14, 1978. I am unable to agree with the majority's interpretation of article 2 of the Real Property Tax Law, concluding that SBEA's power is limited to acting as a procedural oversight agency, that SBEA is prohibited from becoming an active participant in local assessment procedures, and that the exclusive remedy is pursuant to article 7 of the Real Property Tax Law.

The State Board of Equalization and Assessment was created by section 200 of the Real Property Tax Law as part of the Executive Department. Section 202 of the Real Property Tax Law provides for the powers and duties of the State board. Subdivision 1 of section 202 provides that the board, among other things, shall:

"(e) Have general supervision of the function of assessing throughout the state * * *

"(g) Furnish assessors with such information and instructions as may be necessary or proper to aid them in making assessments, which instructions shall be followed and compliance with which may be enforced by the board".

Subdivision 2 of section 216 of the Real Property Tax Law provides, relative to SBEA, as follows: "Whenever it appears to the satisfaction of the board that any assessor or other public officer or employee whose duties relate to assessments has failed to comply with the provisions of this chapter or any other law relating to such duties, or the rules and regulations of the board made pursuant thereto, after a hearing on the facts, the board may issue its order directing such assessor, officer or employee to comply with such law, rule or regulation, and if such assessor, officer or employee shall neglect or refuse to comply therewith within the period of ten days after service on him of such order, the board may apply to a justice of the supreme court for a summary order to compel him to comply with such law, rule or regulation, and the justice shall have power to issue such order."

In April, 1977, SBEA issued to all town assessors in the

State of New York a memorandum of instruction concerning the status of the Universal Life Church.

In May, 1977, Robert Kerwick, Assessor of the Town of Hardenburgh, was served with a subpoena and a subpoena duces tecum for his attendance with certain books and records at a hearing before the SBEA. The subpoenas were issued pursuant to section 204 of the Real Property Tax Law. SBEA had commenced an investigation into exemptions from real property taxation that Mr. Kerwick and the other assessors had granted to individuals affiliated with the Universal Life Church, or its affiliated organizations.

The issuance of the subpoena and subpoena duces tecum was based upon SBEA's belief that the guidelines issued to the assessors had been disregarded.

Following a futile legal challenge to the subpoenas, Mr. Kerwick, on June 22, 1977, appeared before SBEA with the subpoenaed books and records, represented by counsel. At that time, Mr. Kerwick gave sworn testimony with regard to exemptions from real property taxation which he had granted to various real property owners in the Town of Hardenburgh who claimed an exemption from said tax on the basis of affiliation with the Universal Life Church, or some affiliated organization.

Mr. Kerwick's testimony and the tax rolls established that he, as Assessor of the Town of Hardenburgh in Ulster County, had granted 211 total real property tax exemptions on real estate owned by 211 members of the Universal Life Church.

The other assessors involved, Messrs. Wheeler, Hartelius and Lessor, voluntarily appeared before SBEA on July 7, 1977 with their books and records. Each of these assessors testified relating to exemptions from real property taxation they had granted to various real property owners in their respective towns who were affiliated with the Universal Life Church, or its affiliates.

At the July 7, 1977 hearing, the directors of real property tax service of Ulster County and Sullivan County testified concerning problems involved in granting or denying exemptions from real property taxation based upon religious exemptions. Mrs. Clara Williams, Assessor of the Town of Ramapo, testified that although 78 applications for real property tax exemptions were made by members of the Universal Life Church, she denied all of them because the properties were

individually owned and did not otherwise qualify for such exemptions.

Mr. Robert Beebe, counsel to SBEA, presided as hearing officer at those hearings. On October 21, 1977, Mr. Beebe's final report was submitted to the full SBEA. The hearing officer's report concluded that the exemptions, granted by the assessors involved, to property owners claiming exemptions because of affiliation with the Universal Life Church, or its affiliates, had been improperly granted and were, therefore, illegal. The report further found that said real property should be removed from the totally exempt portion of the respective assessment rolls and returned to the taxable portion of those rolls.

SBEA reviewed the hearing officer's report and further reviewed the hearing records, including the transcripts and exhibits. SBEA adopted the hearing officer's reports and issued orders pursuant to section 216 of the Real Property Tax Law, directing compliance by the town assessors. These orders directed that each of the assessors prepare a petition to the appropriate Board of Assessment Review of his town for the proper corrections of the final assessment rolls of that town for the tax year 1977. These petitions would be in the form specified pursuant to provisions of section 553 of the Real Property Tax Law. The issuance of these orders was authorized pursuant to Resolution 77-92 of the SBEA. These orders were duly served upon each of the assessors on October 28, 1977.

Section 216 of the Real Property Tax Law gives the assessor served with an order of this type by SBEA 10 days within which to comply with said order. Therefore, November 7, 1977 was the date by which the assessors were to have complied with SBEA's order. Subsequent to November 7, 1977, SBEA was advised that the assessors in the County of Ulster involved and the Assessor for the Town of Liberty in County of Sullivan had not complied with the orders of SBEA.

SBEA then commenced Proceeding No. 1, pursuant to section 216 of the Real Property Tax Law, to compel the assessors to obey the SBEA orders and to enjoin the levying and collecting of taxes on the respective towns based upon the 1977 assessment rolls until those orders were complied with.

On December 7, 1977, Special Term granted partial relief to SBEA, holding that where an assessor fails to comply with the provisions of law relating to his duties, SBEA may issue an

order, after holding a hearing, directing compliance. Special Term concluded that the inquiries made by respondents and the evidence accepted by them in granting exemptions appeared to be totally inadequate, and directed the assessors to comply with the orders of SBEA. Special Term ruled that it could not enjoin the collection of taxes. However, it ordered the assessor to place the exempted properties on the 1978 assessment rolls, prior to the completion thereof, which had been improperly assessed on the 1977 assessment rolls. The date of Special Term's decision, December 7, 1977, and its order, April 29, 1978, were prior to the date for completion of the 1978 assessment rolls.

The statutes relating to exemptions for religious organizations when read together make it clear that only certain enumerated categories of real property are entitled to such exemptions. The categories are: real property owned by a corporation or association organized and conducted exclusively for religious purposes (Real Property Tax Law, § 421); all real property held by any officer of a religious denomination (L 1958, ch 959; see *Town of Hardenburgh v State of New York*, 72 AD2d 192 [decided herewith]); real property owned by a minister of the corporation, priest or rabbi of any denomination when actually a resident and inhabitant of the State who is engaged in the work assigned to him by the church or by a religious denomination or cult (Real Property Tax Law, § 460); property owned by a religious corporation while actually used by the officiating clergyman thereof for residential purposes (Real Property Tax Law, § 462).

The evidence at the hearings indicates that the properties were owned by individuals where they resided, except for some parcels which were vacant land. The applications for exemption were accompanied by a copy of the covenant of the Universal Life Church and upon the further statements of the owners to the assessor that the properties were used for religious purposes. The exemptions were granted. There was testimony to the effect that services were held once or twice a month on the properties.

The testimony of all the assessors established (1) that title to the real property sought to be exempted by members of the Universal Life Church was neither in the Universal Life Church, nor in any religious corporation or organization; (2) that none of such real property was held in trust for the benefit of the members of the Universal Life Church, nor for

any other religious organization; and (3) that such real property was not used exclusively for religious purposes.

None of the exemptions granted here qualify for exemption under these sections of the Real Property Tax Law providing for exemption from the real property tax. The exemption of real property from taxes for religious uses is strictly construed and the property owner claiming such exemption must prove that the property and the use thereof fall clearly within the exemption provisions of the respective sections of the Real Property Tax Law that authorize such exemptions (*Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N. Y.,* 16 NY2d 222).

The hearings conducted by SBEA constituted an administrative investigation to ascertain whether the tax exemptions so granted for certain real property owned individually by members of the Universal Life Church were legal and proper. Thus, on the issue of whether such exemptions had been properly granted, the objective of the hearing was to ascertain and determine the nature and type of such exemptions and whether such exemptions were authorized by law. Once the nature and basis had been established, the investigation had accomplished its purpose. Since the exemptions were admitted (both as to the nature and type of such exemption), the need for cross-examination on an admitted fact was unnecessary. Furthermore, since this was an administrative hearing as distinguished from a judicial hearing, the scope of judicial review is limited to whether there is any substantial evidence to support the determination. The determination of SBEA, based upon the hearing and findings of the hearing officer, is supported by substantial evidence, and should be confirmed (*Matter of Liberman v Gallman,* 41 NY2d 774).

The law is well settled that the administrative construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld (*Matter of Morris v County Bd. of Assessors of Nassau County,* 35 NY2d 624).

The orders of SBEA adopted pursuant to section 216 of the Real Property Tax Law directing compliance by the town assessors to the extent they relate to the assessment rolls for the year 1978 should be complied with, and the judgment entered April 25, 1978 should be affirmed.

MAIN, MIKOLL and HERLIHY, JJ., concur with KANE, J. P.;

STALEY, JR., J., concurs in part and dissents in part in a separate opinion.

Judgment, entered July 14, 1977, affirmed, without costs.

Judgment, entered April 25, 1978, reversed, on the law, and petition dismissed, without costs.

Judgment, entered July 14, 1978, modified, on the law, to the extent that the petition is dismissed as moot, without costs.

Judgment, entered March 23, 1979, reversed, on the law, and complaint and petition dismissed, without costs.