[599 NYS2d 19]

In the Matter of 31171 OWNERS CORP., Respondent-Appellant,
v NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT, Appellant-Respondent.

First Department, June 8, 1993

APPEARANCES OF COUNSEL

*Tracy B. Parsons* of counsel, New York City *(Brandt & Brandt,* attorneys), for respondent-appellant.

*Judith R. Greenwald* of counsel, New York City *(Edith I. Spivack* and *Joseph I. Lauer* with her on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for appellant-respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

In an effort to improve and maintain the urban housing

stock the Legislature has authorized cities to enact local laws providing multiple dwelling owners with tax incentives to rehabilitate their properties. *(See,* Real Property Tax Law § 489 [1] [a], [b]; [2] [a]; [4].) The City of New York, pursuant thereto, adopted Administrative Code of the City of New York § J51-2.5 (now § 11-243), which rewards residential major capital improvement, moderate rehabilitation and conversion projects with real property tax exemption and abatement benefits. To be eligible, work commenced after January 1, 1979 must be "completed" within 36 months. (Administrative Code § 11-243 [b].) In the case of a conversion to cooperative ownership, benefits are available for improvements commenced prior to June 1, 1986 only if the work, otherwise qualified, is "completed" within three years from the date the Attorney-General accepts the conversion prospectus for filing. (Administrative Code § 11-243 [d] [3].) Thus, it is clear that, by providing a subsidy for the significant expenditure required for such improvement, the J51 law was intended as an incentive to the swift physical upgrading of multiple dwellings, not as a reward for long, drawn-out projects. In the latter case, the costs are so spread out over time that a subsidy is not required.

In April 1985, petitioner, a cooperative corporation whose conversion plan was accepted for filing by the Attorney-General on May 27, 1983, commenced a substantial renovation of its property, including new roofing and the installation of a replacement boiler/burner. On August 31, 1988, petitioner applied to the New York City Department of Housing Preservation and Development (HPD) for tax abatement and exemption benefits pursuant to the then section J51-2.5 of the Administrative Code of the City of New York. On September 5, 1990, HPD denied the application on the ground that petitioner had not completed the work within the three-year limit from the date of the Attorney-General's acceptance for filing of the prospectus for conversion to cooperative ownership. *(See,* Administrative Code § 11-243 [d] [3] [i].) This CPLR article 78 proceeding, in which petitioner successfully challenged HPD's determination of noneligibility but only with respect to the boiler/burner replacement, followed. The parties cross-appeal.

██ The first consideration on appeal is to ascertain the date on which the boiler/burner installation is deemed to have been completed. Petitioner argues that since it had received a "certificate of operation," also known as three-year license, for use of the new equipment from the Department of Environ-

mental Protection (DEP)* within the three-year eligibility period, the boiler/burner work was completed within the time allowed. HPD contends that it correctly construed its own J51 rules to mean that the Department of Buildings' (DOB) sign-off, not DEP's three-year license, was the proper indicium of completion. In annulling HPD's determination with respect to the boiler/burner, the IAS Court accepted petitioner's argument.

As noted, the prospectus setting forth a plan for converting the apartment building in question to cooperative ownership was accepted for filing on May 27, 1983. Thus, May 27, 1986 was the date for completion of the work if petitioner was to be eligible for J51 benefits. It had not, by that date, obtained a "sign-off" from the Department of Buildings on the permit under which the boiler/burner replacement had been carried out. The sign-off, based on an inspection to ascertain whether the newly installed boiler/burner and its appurtenances meet minimum safety requirements for the intended purpose of burning fuel and generating heat, is a certification that the installation is complete for operation and authorized for use. No attempt to obtain this sign-off, which finally took place on March 7, 1988, was made until after the three-year period had elapsed.

Administrative Code § 11-243 (a) (4) defines " '[c]omplete' an alteration or improvement" as to "conclude or terminate any physical operation * * * to an extent or degree which renders such building capable of use for the purpose for which the improvements or alterations were intended." HPD's rules define " '[c]ompletion' " as the "earlier" of four listed dates. (§ 2.4 [2] of Department of Housing Preservation and Development Rules and Regulations, as Amended, Governing Tax Exemption and Tax Abatement, Pursuant to Section 11-243 [formerly § J51-2.5] of the Administrative Code of The City of New York and Section 489 of the Real Property Tax Law [J51 Rules].) Insofar as is relevant, section 2.4 provides:

"Section 2.4 *Time Requirements* * * *

"(2) 'Completion' means the earlier of the following dates:

"(a) The date of issuance or reissuance of a certificate of occupancy;

"(b) The date of issuance of a temporary certificate of

---

* DEP is the agency charged with the duty of enforcing the Air Pollution Control Code (*see,* Administrative Code § 24-101 *et seq.*).

occupancy for all of the dwelling units therein provided the only work remaining to secure a certificate of occupancy is work to be performed or completed in space to be used exclusively for non-residential purposes;

"(c) The date of issuance of a letter of completion by the Department of Building[s] if issued in connection with the alterations or improvements or conversion;

"(d) The date of issuance of a certificate of completion or compliance or other evidence of completion if required to be issued by a City agency other than the Department of Buildings."

Petitioner claims that its boiler/burner was complete under paragraph (d) when it received its DEP certificate of operation.

We accept HPD's construction of its own J51 Rules to mean that DOB's sign-off, not DEP's certificate of operation, was the proper indicium of completion. Paragraphs (a), (b) and (c) of section 2.4 (2) enumerate the instances where the issuance of a DOB sign-off document—a certificate of occupancy, a temporary certificate of occupancy or a letter of completion, respectively—signifies completion. Paragraph (d), which refers to another event of completion, ends with the qualifier, "if required to be issued by a City agency other than the Department of Buildings." As we construe this paragraph, though completion can be signified by evidence of completion issued by agencies other than DOB, such evidence will be accepted only where DOB has no sign-off authority as to the project in question. Evidence of completion issued by an agency other than DOB will not be accepted where, as here, one or more agencies may have approval authority over varying stages or phases of a particular project, but only DOB has the over-all authority to approve the entire project as complete.

In accordance with the Building Code (see, Administrative Code §§ 27-103, 27-185—27-188, 27-787 et seq.), a boiler/burner must be installed pursuant to a DOB-issued permit and cannot be operated until the work has passed a fitness inspection, intended to determine whether, inter alia, the operation of the boiler/burner meets minimum standards of safety (see, Administrative Code § 27-787 et seq.) and the completion of the work is signed off by DOB's issuance of a certificate of approval for use. Only when this certification is issued is there an assurance that the work is completed and the boiler/burner is capable of functioning properly for its intended use.

On the other hand, the Administrative Code's air pollution

control provisions (§§ 24-102—24-190) do not give DEP the sign-off authority to approve the entire boiler/burner installation as fit for use. DEP's authorization is limited to approval of the apparatus that controls the venting of emissions, a by-product of the boiler/burner's operation, with respect to compliance with the Air Pollution Control Code. Thus, a DEP license merely confirms that the boiler/burner's emissions meet Code standards; it does not denote that the boiler/burner is properly burning fuel, generating energy and providing heat, its intended purposes. Only DOB's sign-off performs that task. Thus, petitioner's failure to obtain a DOB sign-off within the three-year period was not, as argued, a mere "minor technicality" in determining J51 benefit entitlement.

Even if J51 Rules § 2.4 (2) was ambiguous, its provisions should have been strictly construed in HPD's favor. Since tax exemptions are in derogation of each taxpayer's responsibility to share the general tax burden, the rule has developed that they are to be strictly construed against the one seeking the benefit and, in case of ambiguity, any doubt resolved in favor of the taxing authority. *(See, Matter of City of Lackawanna v State Bd. of Equalization & Assessment,* 16 NY2d 222, 230.) J51 Rules § 1.2 expressly provides that the rules are to be construed "in accordance with the general princip[le] of law that exemption statutes are strictly construed against the taxpayer applying for the exemption." In any event, an agency construction of its own rules is entitled to great deference. If, as here, it has a rational basis and is neither arbitrary nor capricious, it should be supported. *(Matter of Howard v Wyman,* 28 NY2d 434, 438.)

■ As for the timeliness of the completion of the roofing work, the subject of petitioner's cross appeal, there is no official document on which HPD can rely to confirm that the work was satisfactorily completed within the applicable three-year time limitation since, unlike the boiler/burner installation, such an improvement does not entail any governmental supervision; neither a permit nor a certification that the work was properly completed is required. With respect to such unsupervised work, HPD's J51 Rules, specifically section 2.4 (3), require affidavits or "the submission of such information as may be required by the Office, including but not limited to, a copy of work contract, cancelled checks and a contractors affidavit, which confirms such completion date to the satisfaction of the Office." In accordance with the applicable rule,

HPD requested submission of petitoner's roofing contract and cancelled checks to the roofer.

The roofing contract called for progress payments and specified a total price of $54,500, with 10% ($5,450) to be paid on the signing thereof and the remainder paid "in installments representing 90% of the value of the materials installed and work done by Contractor." In the event petitioner did not pay on time, "[p]ayments due and unpaid under the Contract Documents shall bear interest from the date payment is due."

The cancelled checks approximating the contract price consisted of three checks dated prior to the statutory deadline and two checks, one dated August 4, 1986, the other, March 11, 1988, long after the May 27, 1986 deadline. The latter, in the amounts of $30,000 and $10,000, respectively, came to over 70% of the contract price of $54,500. Since the two postdeadline checks were too substantial to represent late payments and did not appear to include any late-payment interest, there seems little doubt, on such a showing, that the work was not satisfactorily completed by the statutory deadline. Thus, HPD rationally concluded that the roofing was not timely completed and denied petitioner's claim for J51 benefits. This conclusion is one based on basic contract law. Absent a specific contractual provision therefor, payment is due immediately upon completion of performance. *(Gurski v Doscher,* 112 App Div 345, *affd* 190 NY 536.)

The roofing contractor's letter to petitioner's attorney to the contrary, dated more than four years after the work was purportedly completed, was never submitted to HPD and was, quite obviously, prepared solely for this litigation. In any event, it fails to satisfy the requirements of J51 Rules § 2.4 (3) since it is unsworn and unaccompanied by any document made contemporaneously with the work to verify that, indeed, the work had been satisfactorily completed by the May 27, 1986 deadline.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Beverly S. Cohen, J.), entered March 25, 1992, vacating the determination of respondent HPD denying certification for real property tax benefits for the boiler/burner installation and confirming HPD's denial of certification of the roofing work, should be modified, on the law, to the extent of confirming the denial of certification for the boiler/burner replacement work and dismissing the petition in its entirety and, except as thus modified, affirmed, without costs or disbursements.

MURPHY, P. J., WALLACH, Ross and KASSAL, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered March 25, 1992, vacating the determination of respondent HPD denying certification for real property tax benefits for the boiler/burner installation and confirming HPD's denial of certification of the roofing work, is modified, on the law, to the extent of confirming the denial of certification for the boiler/burner replacement work and dismissing the petition in its entirety and, except as thus modified, affirmed, without costs or disbursements.