OPINION OF THE COURT
Stanley Parness, J.
This is a petition by Consolidated Edison (Con Ed) under CPLR article 78 for an order annulling a determination by respondent New York City Finance Commissioner, that certain electronic equipment installed by Consolidated Edison at various sites is assessable for purposes of real property taxation. The various locations of the disputed equipment are enumer *205 ated in exhibit "A” annexed to the supporting affidavit of John Lamparello dated September 22, 1994. The equipment which Con Ed asserts to be unassessable consists of Con Ed’s energy resource management (ERM) system, "a computer system which monitors, analyzes and facilitates control over Con Edison’s electric generation, transmission and distribution system from a centralized location.” (Petition para 5.) The components of the ERM system are distributed among 150 locations, including the 21 properties at issue herein.
According to the affidavit of A. Mayer Sasson, of September 22, 1994, chief of Con Ed’s systems operation department and holder of a Ph D in electrical engineering, the system "monitors the production, transmission and distribution of electricity and the operating status of equipment within Con Edison’s power system. It then analyzes the resulting data and displays it in user friendly form for centralized supervision and control”. Sasson directly traces the decision to create and install the system to the "1965 Northeast black-out”.
Specifically, Sasson relates that the ERM system "obtains data at two second intervals” from 150 remote locations at generating facilities, transmits the data to Con Edison’s control center in Manhattan. There the data is analyzed and displayed, and decisions are made by people (not computers) based on the data. These decisions, however, "include commands to open and close breakers, to dispatch bulk electric purchases, and oversee the operating status and production levels of generating units within the system” (Sasson affidavit paras 12, 13, Sept. 22, 1994). The system "functions as the electronic eyes, ears and voice of the operators” (id.), in determining whether or not a current condition is unsafe, and the method of correction. Clearly, it is a functional physical component of Con Edison’s system for the production and distribution of power.
The description of the equipment at issue and its intimate physical and functional relationship and installation vis-a-vis the power generators is set forth in greater particularity in the opposing affidavit of Bernard Kushner, P.E., and photographic exhibits annexed.
Thus, the system is used to acquire data necessary to make operating decisions and to execute certain operating commands. The system cannot run without a program (software). Here the software was created by the manufacturer of the electronic equipment (hardware) specifically for Con Ed’s system and Con Ed’s requirements, and developed in conjunction with Con Ed’s employees.
*206 The definition of "real property” for purposes of taxation under RPTL includes, under section 102 (12) (f), the following: "(f) [b]oilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto”.
Con Ed concedes, in reply memorandum paragraph 9, that the ERM is necessary for the safe and efficient functioning of the generating equipment on an ongoing basis. Assuming that, as Con Ed asserts, that the generating equipment could run for an extended period of time without the ERM in operation, it clearly was and is Con Ed’s purpose to run the power generating system with the ERM.
This court is obliged to strictly construe a statute providing for a tax exemption. "[Wjhere an exemption is not plainly expressed one will not be presumed” (McKinney’s Cons Laws of NY, Book 1, Statutes § 294). Further, under generally accepted rules of statutory interpretation: "words of ordinary import are to be construed according to their ordinary * * * and usual meaning”. (McKinney’s Cons Laws of NY, Book 1, Statutes § 232.) Applying these rules to the case at bar, it is plain that the ERM computer operating system is an integral component of the generators used by Con Ed for the production and distribution of "heat, light and power” within the meaning of RPTL 102 (12) (f). In a sense it is no different in function than that of a thermostat except that the equipment here monitors the production and distribution of electricity while a thermostat provides the same function with respect to production and distribution of heat. Moreover, it appears that the only exemption applicable is for moveable machinery, which the disputed equipment clearly is not considering its integration into a nonmoveable system. Inasmuch as the disputed equipment does not fall within the single exemption contained in RPTL 102 (12) (f), no other exemption will be employed. (See, Matter of City of Lackawanna v State Bd. of Equalization & Assessment, 16 NY2d 222, 229; and this court’s decision in Matter of Merrill Lynch, Pierce, Fenner & Smith v Tax Commn., Sup Ct, index No. 59109/88, affd 191 AD2d 403, lv dismissed 82 NY2d 706.)
*207 Accordingly, the court concludes that all items of disputed property are assessable as real property under RPTL 102 (12), and the instant petition to annul the respondents’ determination of assessability is dismissed.