In the Matter of VILLAGE OF PELHAM, Petitioner, against NEW YORK STATE BOARD OF EQUALIZATION AND ASSESSMENT, Respondent.

Supreme Court, Special Term, Albany County, July 22, 1955.

*Clinton S. Hadley* for petitioner.

*Jacob K. Javits, Attorney-General (James O. Moore, Edward J. Grogan, Jr.,* and *George A. Radz* of counsel), for respondent.

BOOKSTEIN, J. Respondent contends that petitioner has no status to institute and maintain this proceeding. Hence, it seems logical to dispose of that question first.

Prior to the abolition of the writ of certiorari under the Tax Law, by section 290 of the Tax Law, effective May 1, 1949, said section read in part as follows: " Any person assessed upon

any assessment-roll, claiming to be aggrieved by any assessment for property therein, may present to the supreme court a petition duly verified setting forth that the assessment is illegal * * * erroneous * * * or * * * unequal ''.

Under section 290 of the Tax Law, as it then existed, no city, town or village could institute a proceeding to review an assessment upon its own roll. (*People ex rel. City of New York* v. *Chapman,* 193 Misc. 27.)

Section 290-b of the Tax Law, as amended, effective April 20, 1950, reads as follows, so far as pertinent: '' Any person claiming to be aggrieved by any assessment * * * upon any assessment-roll may commence a proceeding under this article by serving upon the officers designated in section two hundred ninety-one a petition, as prescribed in section two hundred ninety-c, together with a notice in writing of an application for review under this article * * * Commencement of a proceeding under this article shall not stay the proceedings of the assessors or other persons against whom the proceeding is maintained ''.

Thus, it is seen that under former section 290, *any person assessed,* could maintain a proceeding to review an assessment.

Under present section 290-b, *any person aggrieved* may maintain such a proceeding.

By reason of such change in the language of the statute, petitioner claims it is a *person aggrieved* and may maintain this proceeding.

Section 46 of the Tax Law confers the right to a review by the courts of a special franchise assessment in the manner prescribed by article 13 thereof (of which § 290-b is a part).

It is on the basis of sections 46 and 290-b that petitioner contends that it is entitled to maintain this proceeding.

This court cannot agree with such contention.

The right to review a special franchise assessment is conferred by section 46 of the Tax Law, which then provides for a review in the manner prescribed by article 13 and that article applies so far as practicable to such assessment, '' in the same manner and with the same force and effect as if the assessment had been made by local assessors ''.

To my mind this clearly indicates the legislative intention that only assessments by local assessors against real property are the subject of review under article 13, and that an aggrieved person can only be one who is liable for the payment of taxes on real property assessed by local assessors.

The fact that the Legislature granted the right of review to an aggrieved person in section 290-b of the Tax Law and conferred such right by section 46 separately with reference to a special franchise tax assessment, demonstrates rather clearly that it did not have in mind that a person affected by a special franchise assessment was contemplated as a person aggrieved within the meaning of section 290-b. If the Legislature had intended that a person aggrieved by a special franchise assessment already had the right of review conferred by section 290-b, then there existed no necessity for conferring the right of review found in section 46.

The reference in section 46 to article 13 is to the procedure for review, prescribed by that article and to the final effect of a determination under that procedure and not to the right to review conferred by that article.

Section 46 does not confer any right on a municipality to review a special franchise assessment. That section provides for a review within a certain time after written notice of final valuation, prescribed by section 45-d, shall have been served by the Tax Commission upon the person, copartnership, association or corporation affected.

Section 45-d provides that upon filing the statement required by section 45-c of the final valuation of a special franchise, the Tax Commission shall give to the person, copartnership, association or corporation affected written notice thereof, which notice shall contain a statement of the value of such special franchise as *finally fixed and determined*.

It seems clear that the notice thus provided for is to the person assessed for a special franchise and that section 46 refers back only to the person so assessed, who may institute by virtue thereof, the proceeding to review within sixty days after receiving the notice prescribed by section 45-d. Indeed, the heading of section 45-d reads " *Special franchise; certification of final valuations to owners* ".

This plainly indicates that the notice required by section 45-d is to owners only and it necessarily follows, when the two sections are read together, that such owners are the only ones upon whom section 46 confers the right to review.

As bearing out such a conclusion, it should be borne in mind that section 45-a provides that, " On determining the valuation of a special franchise the tax commission shall immediately give notice in writing to the person, copartnership, association or corporation affected, *and to each city, town or village in which*

*such special franchise is subject to assessment, stating in sub-stance that such determinations have been made* ". (Emphasis supplied.)

Note the difference between this section and section 46. Section 45-a requires notice to the person, etc. affected *and* to the municipality. Section 46, employing the same language as to the person, etc. affected by the assessment, *omits* any reference to a municipality. The inclusion of the municipality in the one section and its exclusion in the other makes clear an unmistakable legislative intent to limit the right of review under section 46 to the taxpayer.

In section 45-a, provision is made for a complaint against a franchise assessment by either the person, etc. affected or by the municipality or both.

Section 45-b confers the authority to make the final determination after a hearing on the complaint or complaints provided for in section 45-a. Section 45-c then provides for a certificate of final valuation to be filed with the municipality and requires such final valuation to be entered on the assessment roll with the same force and effect as if such assessment had been originally made by such assessors.

The only right of a municipality by way of any review is the one provided for by way of a complaint against the first determination of special franchise valuation and the hearing thereon, as provided for by sections 45-a and 45-b. The value fixed finally in accordance with section 45-b is final as to the municipality, which under section 45-c, must enter such final value on its rolls.

Then by section 46, the right to a court review is conferred upon the taxpayer and not upon the municipality. (Cf. *People ex rel. City of New York* v. *Chapman, supra.*) Parenthetically, it would appear that the change in the language of section 290-b conferring the right of review on " Any person claiming to be aggrieved " from the language employed in former section 290, conferring such right on " Any person assessed upon any assessment-roll claiming to be aggrieved ", was doubtless prompted by a desire to bring the statutory language into accord with earlier judicial decisions. (See *People ex rel. Binghamton Operating Corp.* v. *Eyrich,* 179 Misc. 197, affd. 265 App. Div. 562.)

Incidentally, the effect of what petitioner seeks here to accomplish is to increase special franchise assessments.

Courts are not empowered to increase assessments. They may confirm or reduce them only. (*People ex rel. City of*

*New York* v. *Keeler,* 237 N. Y. 332; *People ex rel. City of New York* v. *Tripp,* 237 N. Y. 568; *People ex rel. City of New York* v. *Voris,* 237 N. Y. 569.)

While this court is convinced that petitioner is not entitled to maintain this proceeding, it nevertheless feels that it would in the best interest of the parties be better to dispose of same on the merits as well.

Under section 49-a of the Tax Law, the Tax Commission is charged with the duty of ascertaining the percentage of full value at which taxable real property in a town or village is assessed on the assessment roll and of thereupon establishing a final rate of equalization for such roll.

For the year 1953, it found the equalization rate for the Village of Pelham to be 69% and for the Town of Pelham 95%.

Under section 45 of the Tax Law, the commission is charged with the duty of fixing and determining the assessment of each special franchise subject to assessment in each town or village. That section further provides that in determining special franchise assessments, the commission shall apply the latest equalization rate, *except* as to any portion of the special franchise property which was assessed for the year 1953, to which it shall apply the 1953 State equalization rate. That section freezes permanently the 1953 equalization rate as to all special franchises assessed in 1953.

Petitioner has no quarrel with the respective equalization rates of 69% for the Village and 95% for the Town of Pelham. Its contention is that the special franchise assessments in question should have applied thereto the 95% equalization rather than the 69% equalization rate.

Section 104 of the Village Law permits a village to use the assessment roll of the town of the current year as the basis for its own assessments and also for notification to the Department of Taxation of the adoption of a resolution for such use. Pursuant to said section of the Village Law, the trustees of the petitioner, prior to the completion of its 1953 assessment roll, to wit, on October 20, 1953, adopted a resolution to use the town assessment roll and notified the Department of Taxation of such action.

Prior to such action of the petitioner, to wit, on May 11, 1953, the Department of Taxation, through the State Board of Equalization and Assessment, fixed and determined the final full value of the special franchises for the Village and Town of Pelham and an equalization rate for said town of 95%, and an equalization rate of 69% for petitioner, and on June 12, 1953, in accord-

ance with section 45-c of the Tax Law, mailed the certificate of final full and equalized valuation of such special franchises, in the village, to the village clerk of the Village of Pelham.

As a result of the adoption by petitioner of the valuations of the Town of Pelham, the total assessed value of the real estate in the Village of Pelham (not including special franchises) was increased from its 1952 values of $6,303,883 to $8,884,304 for its 1953 assessment roll; and the tax levied thereon in 1954, was accordingly reduced from the prior rate of $22 to $16 per $1,000 of assessed valuation.

The net result of the actions of petitioner and respondent is that the tax levied for 1954, on real property in the village of Pelham is 95% of full value while, on special franchise, it is 69% of full value. To the extent of the difference between 69% and 95% of full value, the special franchises are benefited as against the real property of the village.

The result is, of course, inequitable and petitioner seeks in this proceeding, as an alleged aggrieved person, under the Tax Law, to review the action of respondent in applying to special franchises the 69% equalization rate rather than the 95% equalization rate. In reality, what it is seeking is an order compelling a different final assessment against special franchises by the application of the 95% equalization rate, rather than the 69% equalization rate to the full value of the special franchises.

The difficulty here is that the 1953 equalization rate of 69% for petitioner was fixed and determined on June 12, 1953. The adoption of the town assessment roll, for which the equalization rate for 1953 was 95%, did not occur until October 20, 1953. In the meantime, section 45 of the Tax Law had become effective September 1, 1953, and froze the 1953 equalization rate (already fixed in June, 1953) as against special franchises. Under that statute, respondent had no power to alter the equalization rate as against special franchises, even though, as to real property, by petitioner's adopting the town roll, the equalization rate became 95%.

Petitioner contends that section 45 is susceptible to a construction, in the existing situation, that would permit and require the application of the 95% equalization rate instead of the 69% equalization rate to special franchises.

The frozen equalization rate for special franchises in the Town of Pelham is 95% while in the Village of Pelham it is 69%.

Section 45 of the Tax Law requires the Tax Commission annually to fix and determine the assessment of each special franchise subject to assessments in each city, town or village. It

further provides that " In determining such assessment it shall apply the latest state equalization rate *except* as to any portion of the special franchise property which was assessed for the year nineteen hundred fifty-three to which it shall apply the nineteen hundred fifty-three state equalization rate." (Emphasis supplied.)

In a case such as is here presented, petitioner contends that the statute does not say whether the 1953 State equalization rate to be applied is the one for the town or the one for the village and that, since the village adopted the town roll, with a 95% equalization rate, the statute should be construed so as to have the town equalization rate applied rather than the village equalization rate. While such a result might very well be desirable and just, this court is of the opinion that such a construction would do violence to the plain language of the statute. It must be borne in mind that the first sentence of section 45 of the Tax Law requires the Tax Commission to fix the assessment of each special franchise subject to assessment in *each city, town or village.* This it did in June, 1953. The second section of section 45 commands the commission, in determining such assessment *to apply the latest State equalization rate except as to any* portion of the special franchise property which was assessed for the year 1953, to which it shall apply the 1953 State equalization rate.

True, the statute does not say the latest equalization rate, " in each city, town or village " shall be applied. But it necessarily means just that. So, too, in the exception contained in the second sentence of section 45 wherein the commission is commanded to apply the 1953 State equalization rate, it does not say " in each city, town or village " affected. It necessarily follows nevertheless that the statute means just that.

Let us suppose that the petitioner had not adopted the assessment roll of the Town of Pelham. Certainly, in that case the assessment of special franchise in the village of Pelham could not be attacked because the respondent in compliance with law determined full value and then applied the equalization rate of the village to arrive at the final assessment. It did not apply the higher equalization rate of the town. Yet the statute is just as silent in that case as to which equalization rate should be applied, to wit, that of the village or that of the town. It is inconceivable that the statute could be construed as permitting the respondent to choose whether to apply the equalization rate of one or the other, even though the statute does not use the words of the city, town or village, when referring to the equalization rate

to be applied. But it is clear that the statute intended that there should be applied the equalization rate of the governmental unit for which the assessment was being fixed. If that be true, where no change has been made in the assessment roll pursuant to section 104 of the Village Law, it might be equally true where such a change has been made, even though, in the latter case, an unjust result may follow. If the construction contended for by petitioner were the legislative intent, the Legislature could very easily have made the exception or proviso for the contingency which has here arisen. This it failed to do. It may be due to oversight. It may have been intentional. We have no way of knowing. But, in any event, to so construe the statute is entering into the field of judicial legislation rather than construction.

Assuming, that the result in this situation is unfair and inequitable, it seems apparent that the remedy is with the Legislature and not with the courts.

Petition dismissed upon the merits, without costs.

Submit order.