In the Matter of ONTEORA CLUB et al., Respondents, *v.* BOARD OF ASSESSORS OF THE TOWN OF HUNTER, Appellant.

Third Department, February 21, 1968.

*Whalen, McNamee, Creble & Nichols* (*David S. Williams* of counsel), for appellant.

*N. LeVan Haver* and *Richard B. Overbagh* for Twilight Cottagers, respondent.

GIBSON, P. J. These appeals are from orders of the Supreme Court which, in this proceeding to review certain tax assessments, denied applications by the Board of Assessors to strike from the petition all references to certain properties therein specifically designated, on the grounds that "the parties aggrieved by the assessments upon such properties are not petitioners in this proceeding" and that "petitioner, Twilight Cottagers, is not a party aggrieved by the assessments upon such properties."

The controlling statute in pertinent part provides that "any person claiming to be aggrieved by any assessment of real property upon any assessment roll may commence [the] proceeding". (Real Property Tax Law, § 704, subd. 1.)

Twilight Park Association, which is not a party to this proceeding, is the fee owner of the 94 properties within Twilight Park at Haines Falls which are involved in this appeal. The properties fall within three categories; one, those leased by the Association to various individuals under 99-year leases; two, areas available for lease, but not leased; and, three, improved and unimproved lands used, or available for use by all the inhabitants of Twilight Park, including roads and bridges, reservoirs, the laundry and the inn. Prior to the commencement of this proceeding, the various lessees of the properties in the first category filed the requisite protests (Real Property Tax Law, § 512). Twilight Cottagers, a membership corporation in contractual arrangement with the Association, filed protests for the unleased properties and for the so-called common-use properties in the second and third categories. In this proceeding, petitioner Cottagers seeks redress with respect to the assessments upon all the properties in all three categories; and, as above indicated, its right to do so is challenged on the theory that it is not a "person claiming to be aggrieved", within the intendment of section 704. The source of petitioner's right to sue is an agreement, dated September 30, 1905, between Twilight Park Association and Twilight Cottagers, which recites the Association's leases of "the greater portion of the lots contained in Twilight Park", pursuant to leases providing for payment of yearly rent to be devoted by the Association "towards maintaining and constructing bridges, walks, water reservoirs, and pipes, sanitary arrangements and other matters of general benefit to the lessees of lots within said Twilight Park, the lessees paying all taxes which may be assessed on the premises leased to them respectively"; and the agreement further reciting that in order to adjust the differences which had arisen between the Asso-

ciation and the lessees as to the sufficiency of the rents to maintain the park properly, "the said lessees have organized themselves under the name of the Twilight Cottagers, and the said Association has agreed to turn over to them the management of the Park, together with all rents under the leases which may hereafter become due, said Cottagers agreeing to maintain the Park." By the agreement the Association thereupon transferred to Cottagers unleased property and common-use property hereinbefore referred to as composing the second and third categories of property; and the Association then assigned to Cottagers the rents to become due from the lessees and appointed "the said Cottagers during the continuance of this agreement, its agents and attorney, with full authority in their own name, or in the name of the Association, but without expense to the latter, to collect, receive and receipt for all such rents or other moneys, and to conduct and manage said Park." Cottagers agreed to collect the rents, to maintain the Park up to the existing standard, "applying all the moneys collected from the lessees to such purposes; and [to] assume and perform all the obligations of the said Association towards the various lessees, imposed by the leases which it has made to them respectively, and [to] protect said Association from all claims thereunder"; and Cottagers further agreed to "enforce * * * the covenants on the part of said lessees contained in the leases, [being] authorized to use the name and act on behalf of the Association, but without expense to it". The power thus conferred to enforce lease covenants included the collection of assessments to be made annually for a variety of purposes in connection with the maintenance and security of the Park, its grounds, roads, utilities, buildings and other apparatus and appurtenances, the collection and payment of taxes assessed upon the unleased and common-use property, and, also, the collection, upon default of any lessee of the amounts of the taxes levied against his leased property.

The uncontradicted evidence is that, presently as in 1905, the lessees compose the membership of Cottagers.

It is evident, then, that Cottagers' interest, rights and liabilities are derived not only from its contractual arrangement with the fee owner but from the essentially representative nature of its relationship with the lessees as well, and are sufficiently comprehensive to constitute it a person properly "claiming to be aggrieved" within the "principle of broad construction applicable to remedial statutes pertaining to assessment and taxation". (*Matter of McLean's Dept. Stores* v. *Commissioner of Assessment*, 2 A D 2d 98, 101.) Within

the definition of persons aggrieved is each individual lessee obligated to pay taxes during the term of the lease (*Matter of McLean's Dept. Stores* v. *Commissioner of Assessment, supra*) and the Association as owner of the underlying fee (*People ex rel. Schaeffler* v. *Barker,* 87 Hun 194, 198, affd. 148 N. Y. 731); and petitioner Cottagers is the possessor of an interest and of a right and duty of representation derived from each. From the facts that when the fee owner " agreed to turn over to [Cottagers] the management of the Park " and the fee owner's rights in the leases as well, " with full authority in [Cottagers'] own name, or in the name of the Association " to handle all funds and to perform the myriad duties necessary " to conduct and manage said Park ", the conclusion is inescapable that the intent of the parties was to include in Cottagers' manifold fiscal responsibilities that of managing tax and assessment problems, this including, of course, the enforcement of appropriate remedies.

The argument of the appellant board rests in substantial part upon the thesis that petitioner is not the real party in interest within the purport of section 210 of the former Civil Practice Act, not explicitly carried over into the CPLR. That argument blurs the distinction between the " real party in interest " concept and the phrase here pertinent, " person claiming to be aggrieved ". (Real Property Tax Law, § 704, subd. 1.) Appellant's citations in support of its theory are of doubtful value, the issue not being truly procedural but that with respect to the underlying substantive right giving rise to the cause of action. " Analysis is impeded by attempting to treat the problem in terms of ' real party in interest.' " (2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1004.01, p. 10–31; and cf. *People ex rel. Ambroad Equities* v. *Miller,* 289 N. Y. 339.) It is fundamental, of course, that " an assessment is levied against the land and not against the owner, the name of the latter being noted merely for the purpose of identification." (*People ex rel. Bingham Operating Corp.* v. *Eyrich,* 265 App. Div. 562, 565; *People ex rel. Ambroad Equities* v. *Miller, supra; People ex rel. Schaeffler* v. *Barker, supra.*)

The orders should be affirmed, with costs.

HERLIHY, AULISI and STALEY, JR., JJ., concur.

Orders affirmed, with $20 costs.