OPINION OF THE COURT
David O. Boehm, J.
There are presently pending three tax assessment review proceedings against the City of Rochester brought by the petitioners pursuant to article 7 of the Real Property *285 Tax Law, seeking a review of the 1983-1984 assessments on three parcels of property owned by the petitioners which were reassessed for the 1983-1984 tax year. This motion for partial summary judgment is now brought by the petitioners to declare the entire city tax roll for 1983-1984 illegal on the ground that a uniform percentage of value of all properties was not used in making the tax roll.
It is undisputed that the city, in preparing the tax roll for 1983-1984, used a dual rate method for those properties which it reassessed or newly assessed for that tax year. Two equalization rates were used: one being 16.69% of full value for one-, two- and three-family dwellings and a rate of 22.12% for all other properties on the assessment roll. These rates were established by the State Board of Equalization and Assessment. A similar two-rate system with somewhat larger equalization rates was also used for the prior tax year. Approximately 150 parcels, or .2% of the total properties on the tax roll, were assessed by this dual rate method for the 1983-1984 tax year.
Petitioners argue that the adoption and use of such dual assessment rates is an acknowledgement by the city that there has been a de facto difference in assessments for many years, in violation of section 305 of the Real Property Tax Law. However, since only prospective relief is requested, they ask that only the 1983-1984 tax roll be declared illegal. At argument petitioners disclaimed any constitutional attack upon the city’s assessment procedure or the sections of the Real Property Tax Law involved in making such assessments, and therefore that issue is not before me.
Although section 305 of the Real Property Tax Law requires all property to be assessed at a uniform rate, there are two exceptions, one provided by article 18 of the Real Property Tax Law, special assessing units, and the other by article 19, approved assessing units. The city comes within neither exception.
The Legislature, beginning in 1977, enacted a series of amendments to the Real Property Tax Law in response to Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1). The apparent purpose of such legislation was to preserve the benefits of fractional assessment which had be *286 come embedded in assessment practice for almost 200 years. This legislation culminated in articles 18 and 19 of the Real Property Tax Law (L 1981, ch 1057).
Article 18, which established special assessing units, applies only to municipalities with a population of 1,000,000 or more, a category excluding Rochester.
Article 19, which applies to all municipalities except New York City and Nassau County, authorizes differential tax rates for residential (homestead class) property. Residential, or homestead class, property includes only one-, two- or three-family dwelling parcels. Such differential tax rates, however, may not be imposed until the assessing unit becomes an “approved assessing unit”. In order to do so, the municipality must first have reassessed all of its real property at a uniform percentage of value in accordance with standards issued by the State Board of Equalization and Assessment.
By the city’s own admission, it has not yet completed such reassessment nor become an approved assessing unit, and therefore does not at this time come within article 19. However, the city has nevertheless used the foregoing differential assessment ratios in reassessing or newly assessing approximately .2% of the properties in the 1983-1984 assessment roll.
In his affidavit, the city assessor justifies using this dual rate method on the ground that the new small claims assessment review procedure permits such differential ratios for review purposes and, therefore, he may set assessments using the same standards by which such assessments may later be reviewed.
Included in the series of amendments enacted by the Legislature as a result of Hellerstein was chapter 1022 of the Laws of 1981 which by title 1-A of article 7 of the Real Property Tax Law, created special proceedings for small claims assessment review. It permitted for the first time owner-occupants of residential property to challenge their assessments by a simplified hearing procedure before a hearing officer selected from a panel appointed by the chief administrator of the courts. Residential properties include only one-, two- and three-family dwellings. Such hearings do not require counsel or expert witnesses, are conducted *287 on an informal basis, and permit evidence to include the most recent equalization rates for the assessing unit, the residential assessment ratio established by the State board and the assessment of comparable residential properties within the assessing unit.
Thus, for purposes of assessment review, the law favors residential property owners by allowing them a lower assessment ratio than other property owners. Whereas nonresidential properties are valued at 22.12% of full market value for the tax year 1983-1984, residential properties are assigned a residential assessment ratio of 16.29%. The city has included instructions in a “complaint package” for small claims reviews advising property owners to multiply the equalization rate or residential ratio times the property’s current market value to arrive at what the proper assessment should be.
As the city points out, the small claims assessment review procedure will, in many municipalities, be superseded when the municipality complies with the requirements of article 19 after completing re-evaluation of its real property. At such time, all new assessments will be 100% or some other uniform fraction of full value and at such time the State equalization rate and residential assessment ratio will probably be nearly identical. Homeowners will still be afforded the favored treatment they were given in the past because the law permits the municipality at that time to impose a differential tax rate.
However, the fact that title 1-A permits differential assessment ratios for assessment review purposes does not authorize a municipality to apply such ratios in establishing new assessments. To the extent that the city has reassessed or newly assessed properties at a percentage of value which is not uniform, this is clearly in violation of section 305 of the Real Property Tax Law and, therefore, illegal.
Accordingly, petitioners’ motion for partial summary judgment is granted as to those .2% of the parcels which concededly have been reassessed or newly assessed by the dual rate method.
It should be emphasized, however, that by so doing, the entire assessment roll for 1983-1984 does not thereby *288 become illegal. The fiscal consequences of such a broad, sweeping determination are self-evident and, as the Court of Appeals admonished in Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1, 13-14, supra), courts should avoid causing “ ‘disorder and confusion in public affairs even though there may be a strict legal right’”. It was toward this same end that in another case Special Term (Hughes, J.), in reviewing an attack upon a town assessment roll, rejected the consequences permitted by subdivision 1 of section 720 of the Real Property Tax Law of striking an assessment roll upon a finding of illegality and, alternatively, directed that in the future the illegal practice be discontinued (Matter of Bauer v Board of Assessment Review, 114 Misc 2d 640, affd 91 AD2d 1097).
It appears that most of the assessments on the 1983-1984 roll, nearly 98%, were carried over from earlier years, many of them dating back 10, 20, 30 years or more. As to these, the city argues, there was no systematic dual method of assessment utilized, but simply a continuation of assessments that had been on the tax rolls well before Hellerstein and long before the differential ratios established by the State board were used. Although complete reevaluation has not yet been completed, it does seem that the city is in the process of reassessing all of its properties as quickly as its available resources and manpower permit. In the meantime, a wholesale nullification of the entire assessment roll is neither necessary nor desirable. The petitioners’ rights are adequately met by granting their motion for partial summary judgment with respect to only that small percentage of the properties which have been reassessed or newly assessed by the use of differential ratios and by directing that in future years the city assessor not use the dual rate method when reassessing or making new assessments.
One further comment is in order. As a practical matter, it would seem that the end result may be the same as if residential assessments could legally be established at the . same lower ratio of value as they may be protested. Residential property assessed at the same rate, 22.12% of full value, as all other property will, after a small claims assessment review hearing, be entitled to a reduction of *289 16.29% of full value. Thus, what may not be achieved directly, because illegal, may be obtained indirectly, because permitted. It is understandable why the city assessor thought it appropriate to shortcut the process. Nevertheless, the legislative mandate must be obeyed.
Lastly, the city’s argument that petitioners lack legal standing to obtain summary relief by this mode except as to their own three properties, is without force. The petitioners are owners of nonresidential properties which have been reassessed or newly assessed. Theoretically, the tax burden on their properties is increased incrementally by a reduction in assessments on residential properties. A person is aggrieved when his pecuniary interests are or may be adversely affected by an assessment (Matter of Mack v Assessor of Town of Ramapo, 72 AD2d 604; see, also, Matter of State Board of Equalization & Assessment v Kerwick, 91 Misc 2d 152, affd 72 AD2d 292). When he alleges illegality as to his own as well as to other parcels, he may utilize an article 7 proceeding (Matter of Bauer v Board of Assessment Review, 114 Misc 2d 640, affd 91 AD2d 1097, supra) or any procedural motions which may be brought as part of such a proceeding, including a motion for summary judgment, and obtain relief as to all affected parcels, including his own.