OPINION OF THE COURT
Wallace R. Cotton, J.
Motions by the respondents, Finance Administrator and the Tax Commission of the City of New York (hereinafter City), to consolidate the duplicate petitions filed by petitioner Mott Haven Furniture Company, Inc. (Mott Haven) and to dismiss the consolidated proceedings are both granted.
Pursuant to Real Property Tax Law article 7, Paul Ray Associates (Paul Ray), the landlord of the property at issue, filed petitions to challenge the assessment on the entire property in each of the tax years 1976/1977 through 1983/1984. At the same time, Mott Haven, who leased 35% of the property *668 from Paul Ray, filed duplicate petitions for the tax years 1976/1977 through 1982/1983, excluding the tax year 1980/ 1981.
Under a tax escalation clause included in the lease agreement with Paul Ray, petitioner was obliged to pay as "additional rent” one third of any increase in real estate taxes for the subject property above the taxes due for the 1969/1970 base year. Paragraph 49 of the lease dated July 14, 1970, reads as follows: "It is understood and agreed that in the event the amount of real estate taxes imposed upon the land and/or buildings of which the demised premises are a part, by the City of New York or by any other Municipal or taxing authority shall exceed the amount of real estate taxes imposed upon such land and/or buildings for the real estate tax year of 1969/70 at any time during the term of this lease, tenant shall pay to landlord, as additional rent hereunder, an amount equal to Thirty-Three and One-Third (33Vá) Percent of the amount of such increase in real estate taxes during each year in which such increase occurs, which payment is to be made in advance and shall be due and payable on the first day of August in each real estate tax year in which such increase shall occur. The tax bill of the City of New York or of such other Municipal or taxing authority shall be conclusive evidence of the amount to be paid by tenant.” (Emphasis supplied.)
Petitioner has submitted bills indicating payments under this clause of $8,133.76, $8,039.27, $8,039.27 and $3,226.76 for the tax years 1976/1977, 1977/1978, 1978/1979 and 1979/ 1980, respectively.
The City moved to consolidate the duplicate petitions into the proceeding for the tax year 1976/1977. The city further moved to dismiss the consolidated petitions.
Petitioner responded by making a motion to consolidate its proceedings with those pending in the name of Paul Ray and by making a motion ordering discovery of the lease and records of the real estate tax payments made by all the tenants on the property. Petitioner later amended its notice of motion and cross motion upon locating its own lease as well as bills for escalation payments made to Paul Ray for the tax years 1976/1977 through 1979/1980. The proceedings for the tax years 1981/1982 and 1982/1983 were discontinued by stipulation.
In March 1983 Paul Ray met with the Tax Commission and *669 successfully negotiated a settlement for the tax years 1982/ 1983 and 1983/1984. Because the City is responsible for only one refund on a reduction in assessment, the settlement was subject to the discontinuance of all other outstanding petitions on the property. Petitioner’s subsequent failure to discontinue its duplicate petitions has prevented the Tax Commission settlement from being processed.
The motion to consolidate Mott Haven’s petitions for all the previously mentioned tax years into this proceeding for the tax year 1976/1977 is granted. The same property is under review for each of the above-indicated tax years and common questions of law and fact have been presented (see, RPTL 710). A consolidation benefits all parties involved by reducing the time and expense which would be incurred in litigating, in separate proceedings, similar issues involving identical parties.
The respondents’ motion for dismissal of the consolidated proceedings raises the troublesome issue of standing under RPTL 704 (1). The question before the court is whether a commercial tenant has standing to sue the Tax Commission under RPTL 704 and Administrative Code of City of New York § 166-1.0 (a) as a consequence of a tax escalation clause contained in its lease when the owner of the property has also filed. It is one of first impression for this court. Although we remain sensitive to the fact that the interests of property owners and tenants necessarily conflict, a problem frequently compounded by the owners’ superior bargaining position, and are aware that courts often afford tenants substantial protection of their interests, we hold that as a matter of law and public policy, where duplicate petitions have been filed, tax escalation clauses are insufficient to give commercial tenants standing to sue the Tax Commission.
Petitioner urges the court to accept the definition of an aggrieved party as one "whose pecuniary interests are or may be adversely affected by an illegal assessment” and to regard the escalation payments as sufficient to give the party standing under this definition, without further considering the nature of the injury.
We respond to this suggestion by pointing to pertinent statutes which provide that "[a]ny person claiming to be aggrieved by any assessment of real property upon any assessment roll may commence a proceeding” (RPTL 704 [1]; Administrative Code § 166-1.0; emphasis supplied).
*670 The parameters of the term "aggrieved” are as elusive as they are ill-defined; nonetheless, it is clear that in order to be a "person aggrieved”, one’s pecuniary interests must be, or have the potential to be, adversely affected by an assessment (Matter of Farash v Jacobs, 120 Misc 2d 284; Matter of Mack v Assessor of Town of Ramapo, 72 AD2d 604; People ex rel. Bingham Operating Corp. v Eyrich, 265 App Div 562; Matter of Ames Dept. Stores v Assessor of Town of Concord, 102 AD2d 9). These cases do not modify or contradict the long-standing rule that the injury sustained must be the direct result of the assessment and not remote and consequential (Matter of Walter, 75 NY 354, 357; Matter of Suburbia Fed. Sav. & Loan Assn. v Mayor of Inc. Vil. of Lynbrook, 76 AD2d 841; Matter of Board of Educ. v Parsons, 61 Misc 2d 838). In Farash (supra) the petitioners were owners of nonresidential properties which had been reassessed or newly assessed. There, the court found that a reduction in assessments on neighboring property directly affected petitioners’ property by increasing their tax burden. In both Matter of Mack (supra) and Bingham Operating Corp. (supra) present owners were allowed to obtain relief pursuant to proceedings commenced by previous owners for they were actually paying the tax. And in Ames (supra) petitioner was a net lessee who was obligated under the lease to pay his pro rata share of the taxes and who was assigned the right to contest tax assessments in his own name. Thus, despite the liberal language of these cases, the requirement that the party be directly injured by the tax assessment remains a condition for standing.
A commercial tenant has standing to sue if he is directly obligated or legally liable under a contract to pay the real estate taxes on the property (Matter of McLean’s Dept. Stores v Commissioner of Assessment of City of Binghamton, 2 AD2d 98; New York Yankees v Tax Commn., 74 Misc 2d 752) or if the owner’s right to challenge the assessment has been assigned to him (Matter of Ames Dept. Stores v Assessor of Town of Concord, 102 AD2d, at p 10; Matter of 44 E. 23rd St. Assoc. v Woolworth Co., Sup Ct, NY County, index No. 16694/84). In order for the tenant to be considered a party aggrieved and to have standing for review, these obligations, liabilities and assignments must be clearly expressed in the lease agreement between the owner and the tenant. No such expression appears in the lease presently before the court.
Petitioner bases his claim for standing upon a tax escalation clause found in the lease. A tax escalation clause, however, *671 does not directly obligate or make a tenant legally liable to pay the real estate taxes on the subject property, nor does it abrogate the owner’s right to challenge an assessment. The payment of real estate tax escalations is not equivalent to direct payment of real estate taxes by an owner or a net lessee. Tax escalations, as the lease in question itself recognizes, are nothing more than conditional payments of additional rent and must be considered as additional rental income. (Matter of Spatt v Finance Administrator of City of N. Y., 73 AD2d 918; Matter of Dornhage Realty Co., NYLJ, Nov. 20, 1978, p 14, col 4.) Consequently, a tax escalation clause in and of itself is not an adequate basis to grant a party standing to review assessments on the subject property.
A party aggrieved by a tax assessment has an absolute right to review under article 7 (New York Tel. Co. v Taylor, 64 NYS2d 323) but a commercial tenant does not have an absolute right to review unless the appropriate language can be found within the four corners of the contract (see, 7 Opns Counsel SBEA No. 123; see also, Matter of Onteora Club v Board of Assessors, 29 AD2d 251 [membership corporation’s rights, derived from the contract with the owner, are sufficiently comprehensive to constitute “aggrieved”]).
There is nothing in Mott Haven’s lease with Paul Ray which indicates that it has an absolute right to review, nor have they demonstrated that they have been otherwise aggrieved.
This is not a case where the owner has failed or refused to file an application. This is not a case where the owner has filed an application yet has left it incomplete in order to foil the tenant’s interest and protect his own. In the instant case, the owner has both completed his application with the Tax Commission and come to a settlement. Although it took Paul Ray eight years from the time it first filed until it finally settled with the Tax Commission, Mott Haven was also remiss for it did not initiate any proceeding, not even a motion for discovery of the income and expense information needed to complete its application, during this time. The court is aware that substantial inequities may arise in cases where duplicate applications are filed. A tenant is not stayed from petitioning this court in order to demonstrate the inequities; however, such a petitioner must bear in mind today’s holding: a tax escalation clause does not give a tenant the absolute right to review under article 7.
*672 The petitioner further contends that Paul Ray’s settlement was a "sellout” and not in the best interest of the petitioner and other tenants similarly situated, that Paul Ray traded protests against assessments in tax years in which it was insulated by petitioner’s tax payments for reduction in years in which it was not insulated, and that as a result of this "insulation” Paul Ray had no real interest in seeking a reduction.
The court, however, is not concerned with who will or will not be the beneficiaries of a tax settlement. It is enough that the city is willing and able to settle with the property owner. "Validity * * * of the tax rather than the nature of the title is the interest in such proceedings” (Matter of Romas v Huffcut, 39 Misc 2d 872, 875). The assessment is against the "real property itself’ (RPTL 304 [1]) and there should only be a single assessment of the property without a separation of the interests of the lessor and lessee (People ex rel. Gale v Tax Commit., 17 AD2d 225, 229). In a tax certiorari proceeding it is immaterial whose interests are best being served. The only issue is the correctness of the tax assessment and the valuation of the property (People ex rel. Ambroad Equities v Miller, 289 NY 339, 342). Interested parties can, of course, bring an action on the lease or contract to determine in subsequent proceedings any entitlement to a portion of a tax refund.
The greater interest of the owner taxpayer who completes his application and negotiates a settlement should not be subordinated to that of the tenant. The property owner alone must pay the entire tax bill each year. He is responsible for collecting the additional rent payments and it is the owner, not the tenant, who risks loss of the property if the taxes are not paid. Furthermore, if the owner hopes to sell the property it is in his best interest to make sure it is taxed at the lowest possible rate.
A remedy under article 7 covers only taxpayers with an ownership of the property whose assessment is to be challenged. In its examination of the tax review legislation since the Laws of 1880 to the present RPTL article 7, the Supreme Court of Wayne County found that "the right to review was meant to give relief to taxpayers who were aggrieved by assessments made upon property owned by them or in which they [have a derivative form of ownership, or in which they have] an equitable interest” (Matter of Board of Educ. v Parsons, 61 Misc 2d 838, 844, supra). A tenant is not an owner or a derivative owner ("Tenant” is defined as anyone who pays *673 rent as lessee, sublessee, licensee, or concessionaire [Administrative Code § L46-1.0 (3)]), nor does he have an equitable interest in the property when the owner has filed an application for review and is prepared to settle or has already settled with the Tax Commission.
The Legislature never intended to make a taxpayer an "assessor” of the property of another (Matter of Board of Educ. v Parsons, supra). This is precisely what can occur when a tenant files a duplicate application for a reduction of the assessment of the entire property of which he leases some part. These applications, it should be noted, often remain incomplete for tenants do not, and should not, have access to the income and expense data needed to complete them. Tenants should not be allowed to frustrate the owner’s desire to negotiate settlements with the Tax Commission by filing duplicate applications.
As a practical matter there should be but one party before the court in a tax proceeding. If the court granted a tenant standing merely because an owner failed to fully serve the tenant’s interest, the potential number of controversies would increase exponentially. One can easily imagine the amount of litigation a property like the Empire State Building could generate alone. The need to minimize the number of assessments is appropriate justification for policy making in this area (People ex rel. Gale v Tax Commn., 17 AD2d 225, 229, supra).
Finally, the petitioner claims that the absence from the lease of any explicit provisions prohibiting him from protesting assessments, obliging the landlord to initiate proceedings, or guaranteeing the tenants a refund of any recovered funds enables him to commence a proceeding independently. The fact that the lease in question does not contain any provisions concerning the owner’s or tenant’s right to institute a tax review proceeding does not mean the tenant has that right. It is presumed that a property owner, if he is the taxpayer, holds the exclusive right to protest tax assessments made on his property. It must also be presumed that a nonowner has no right to initiate tax review proceedings on property that is not his own (see, Matter of Board of Educ. v Parsons, supra; Matter of Village of Pelham v New York State Bd. of Equalization & Assessment, 208 Misc 201). The absence of prohibitory language in the lease cannot be read as an abrogation of the owner’s right. The burden remains on the tenant petitioner to show it has standing.
*674 As a matter of law and public policy, Mott Haven is not an aggrieved party under RPTL 704 (1) and therefore lacks standing to sue the Tax Commission. The respondents’ motion to consolidate and dismiss the proceedings is granted.